1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10    ANYSA NGETHPHARAT, JAMES              CASE NO. C20-454 MJP
      KELLEY, individually and on behalf of
11    all others similarly situated,

12                      Plaintiffs,

13          v.

14    STATE FARM MUTUAL
      AUTOMOBILE INSURANCE
15    COMPANY

16                      Defendant.

17    FAYSAL A JAMA, individually and on     CASE NO. C20-652 MJP
      behalf of all others similarly situated,
18
                        Plaintiff,
19
            v.
20                                            ORDER ON MOTIONS TO
      STATE FARM FIRE AND                     DISMISS
21    CASUALTY COMPANY,

22                      Defendant.

23

24

1    This matter comes before the Court on Defendant State Farm Mutual Insurance

2    Company's and State Farm Fire and Casualty's[1] Motions to Dismiss in each of the above-

3    captioned cases, which have been coordinated given the overlapping nature of the claims the

4    Plaintiffs pursue. The Court has reviewed the following materials from Ngethpharat, C20-454:

5    (1) Defendant's Motion to Dismiss (Dkt. No. 16): (2) Plaintiffs' Opposition (Dkt. No. 18); (3)

6    Defendant's Reply (Dkt. No. 24); (4) Plaintiffs' Surreply (Dkt. No. 27); and (5) all supporting

7    materials. The Court has also reviewed the following materials from Jama, C20-652: (1)

8    Defendant's Motion to Dismiss (Dkt. No. 13); (2) Plaintiff's Opposition (Dkt. No. 15); (3)

9    Defendant's Reply (Dkt. No. 16); and (4) all supporting materials. For the reasons set forth

10   below the Court DENIES in part and GRANTS in part Defendant's Motion to Dismiss in both

11   matters and GRANTS in part and DENIES in part Plaintiffs' Motion to Strike in Ngethpharat,

12   C20-454.

**Background**

14   Plaintiffs Anysa Ngethpharat and James Kelley (collectively "Ngethpharat Plaintiffs")

15   have sued their insurer, State Farm, alleging it improperly applied a "typical negotiation

16   discount" to determine the cash settlement value for their damaged cars. Plaintiff Faysal Jama

17   makes the same allegations and also contends that State Farm improperly applied a "condition

18   adjustment" in determining the cash settlement value of his damaged car. The Ngethpharat

19   Plaintiffs assert individual and class claims alleging that the "typical negotiation discount"

20   violates Washington state insurance regulations and the Washington Consumer Protection Act.

21   They also seek declaratory and injunctive relief. Plaintiff Jama brings these same individual and

22

23

---

24   [1] The Court refers to Defendants collectively as State Farm.

1    class claims, and also pursues claims directly under the state insurance regulations, as well as

2    claims for common law bad faith and breach of the covenant of good faith and fair dealing.[2]

3    A.        The Ngethpharat Plaintiffs' Factual Allegations

4           The Ngethpharat Plaintiffs had their vehicles badly damaged in separate accidents. Their

5    insurer, State Farm, declared both cars total losses and made a cash payment to settle each claim.

6    But Plaintiffs allege that State Farm violated state insurance regulations by applying a "typical

7    negotiation discount" to reduce amount it paid for the loss. This deduction was used to lower the

8    actual cash value of comparable vehicles State Farm used to determine the settlement amount.

9           Plaintiff Ngethpharat owned a 2014 Subaru Forrester insured through State Farm. (First

10   Amended Complaint ("FAC") ¶ 1.7 (Dkt. No. 5).) After the car was badly damaged in late 2019,

11   Ngethpharat presented her claim to State Farm, which determined the vehicle a total loss. (Id.)

12   State Farm then offered Ngethpharat $13,378 as the value of her totaled car and provided her a

13   valuation reflecting this amount. (FAC ¶ 1.8.) But State Farm did not supply the "underlying

14   support for that offer." (Id.) After repeated requests from Ngethpharat, State Farm provided a

15   report that it claimed supported the valuation. (Id.) The report was prepared by Autosource,

16   which Plaintiffs allege included "an unverifiable and unclear deduction for 'typical negotiation'

17   off the verifiable price for each of the four comparable vehicles ('comps'), resulting in the base

18   price (what the average of the four comps show as the value) for Plaintiff's vehicle being

19   $919.75 lower than had a 'typical negotiation' discount not been taken." (Id. (emphasis

20   omitted).) The Autosource reports applied different discount rates to the price of the four

21

22

[2] State Farm does not challenge Plaintiff Jama's bad faith and breach of the covenant of good
23   faith and fair dealing claims.

24

1   comparable vehicles—two were reduced by 7% and the two more expensive comparable cars

2   were reduced by 6%. (Id. ¶ 1.16.)

3        Plaintiff James Kelley owned a 2020 Ford Explorer that State Farm insured. (FAC ¶ 1.9.)

4   After his car was badly damaged in January 2020, State Farm determine the car a total loss and

5   offered Kelley $54,056 as the value of his car. (Id. ¶ 1.10.) State Farm did not provide any

6   supporting materials with this valuation. (Id.) Upon request, State Farm then provided an

7   Autosource report showing "an unverifiable and unclear deduction for 'typical negotiation' off

8   the verifiable price of the comparable vehicle identified in the report, resulting in the base price

9   for Plaintiff KELLEY's vehicle being $2,929.00 lower (5% less) than had a 'typical negotiation'

10   discount not been taken." (Id.)

11        The Ngethpharat Plaintiffs allege that the "typical negotiation discount" is "hidden in the

12   fine print" of the Autosource reports. (FAC ¶ 1.11.) They allege that the price listed for the

13   comparable vehicle is not the advertised price but is instead the advertised price "adjusted to

14   account for typical negotiation." (Id.) The report itself only discloses the existence of this

15   deduction in fine print in a footnote and does not provide any further detail as to how this

16   deduction was calculated or determined. (See id.) The result, Plaintiffs allege, is that the base

17   price used for comparable vehicles is less than the verifiable prices for comparable vehicles. (See

18   Id. ¶ 1.12.) Plaintiffs also allege that the "typical negotiation" discount is not consistently applied

19   to vehicles being held as comparable to the loss vehicle. (Id. ¶ 1.16.) For example, the

20   Autosource report provided to Plaintiff Ngethpharat discounted two comparable vehicles'

21   advertised price by 7% while discounting two others' advertised price by 6%. (Id.) And for

22   Plaintiff Kelley, the "typical negotiation" discount was 5% off the advertised price of the

23   comparable vehicle. (Id. ¶¶ 1.10-1.11.)

24

1    B.      Plaintiff Jama's Factual Allegations

2           Plaintiff Jama owned a 2009 Honda Civic Hybrid sedan that State Farm insured.

3    (Complaint ¶ 5.14 (Dkt. No. 1-3).) The car was damaged in May 2019, and after he presented his

4    claim to State Farm it deemed the car a total loss. (Id. ¶¶ 5.15, 5.19.) State Farm determined the

5    actual cash value to be $6,939 and sent to Jama its valuation determination and the Autosource

6    report that included comparable vehicle values on which it was based the valuation. (Id. ¶ 5.21.)

7    The Autosource report set the "base" price for the comparable vehicles by reducing their

8    advertised prices by 9 percent through a purported "typical negotiation discount." (Id. ¶ 5.24.)

9    The Autosource report also deducted $155 from the actual cash value of Jama's car based on the

10   "perceived condition" of Jama's car. (Id. ¶ 5.27.) But as alleged, neither Autosource nor State

11   Farm inspected Jama's car. (Id. ¶ 2.28.)

12   C.      Relevant Regulatory Framework

13          Plaintiffs' claims turn on the allegations that State Farm violated Washington insurance

14   regulations applicable to total loss settlements: WAC 284-30-391 ("Section 391"). Section 391

15   establishes the methods by which an insurer "must adjust and settle vehicle total losses" and the

16   standards of practice for the settlement of total loss vehicle claims. These two standards work in

17   tandem and impose intertwined, but independent requirements on the insurer.

18          1.      Settlement and adjustment process requirements

19          Section 391 states: "unless an agreed value is reached, the insurer must adjust and settle

20   vehicle total losses using the methods set forth in subsections (1) through (3) of this section."

21   WAC 284-30-391 (emphasis added). But the insurer need follow just one of these three methods.

22          At issue in this case is Section 391's "cash settlement" methodology. This provision

23   permits the insurer to "settle a total loss claim by offering a cash settlement based on the actual

24

1  cash value of a comparable motor vehicle, less any applicable deductible provided for in the

2  policy." WAC 284-30-391(2). Section 391(2) includes two key provisions to determine actual

3  cash value of a comparable motor vehicle. First, to determine the actual cash value, "only a

4  vehicle identified as a comparable motor vehicle may be used." WAC 284-30-391(2)(a). Second,

5  the insurer must "determine the actual cash value of the loss vehicle by using any one or more of

6  the following methods": (1) comparable motor vehicle; (2) licensed dealer quotes; (3) advertised

7  data comparison; or (4) computerized sources. WAC 284-30-391(2)(b)(i)-(iv).

8      The insurance regulations include two general definitions relevant to this dispute. First,

9  the regulations define the term "actual cash value" to mean "the fair market value of the loss

10 vehicle immediately prior to the loss." WAC 284-30-320(1). And the regulations define

11 "comparable motor vehicle" as "a vehicle that is the same make and model, of the same or newer

12 model year, similar body style, with similar options and mileage as the loss vehicle and in similar

13 overall condition, as established by current data." WAC 284-30-320(3). This definition also

14 states that "[t]o achieve comparability, deductions or additions for options, mileage or condition

15 may be made if they are itemized and appropriate in dollar amount." Id.

16      2.      Total loss claim settlement practice requirements

17      Section 391 also "establish[es] standards of practice for the settlement of total loss

18 vehicle claims" which the "insurer must" follow. WAC 284-30-391(4). Relevant here is Section

19 391(4)(b), which says that the insurer must "[b]ase all offers on itemized and verifiable dollar

20 amounts for vehicles that are currently available, or were available within ninety days of the date

21 of loss, using appropriate deductions or additions for options, mileage or condition when

22 determining comparability."

23

24

1    D.       Alleged Violations of Section 391

2         The Ngethpharat Plaintiffs allege that the application of the "typical negotiation

3    discount" violates Section 391 in nine ways. First, State Farm violated Section 391(2)(b) by

4    applying the "typical negotiation discount" to the verifiable price of comparable vehicles in

5    determining the actual cash value of the loss vehicle. (FAC ¶ 1.14.) Second, State Farm violated

6    Section 391(2)(b) by failing to base the actual cash value of the loss vehicle on verifiable sales

7    data or other data acceptable under Section 391(2)(b)(i)-(iv). (Id.) Third, State Farm violated

8    Section 391(4)(b) by basing its settlement offer on a "typical negotiation discount" which is not

9    one of the expressly permitted deductions in Section 391(4)(b). (See id.) Fourth, State Farm

10   violated Section 391(4)(b) by failing to base its settlement offer on verifiable dollar amounts for

11   vehicles currently or recently available because the "typical negotiation discount" is not

12   verifiable. (Id.) Fifth, State Farm violated Section 391 by failing to base the "typical negotiation

13   discount" on purported sales within 120 miles of the damaged car, and instead based it on

14   regional data. (Id. ¶ 1.15(a).) Sixth, State Farm violated Section 391 by failing to base the

15   "typical negotiation discount" on the purported sales prices of vehicles within 90 days of the

16   loss, but instead using years' worth of data with no adjustments for seasonality. (Id. ¶ 1.15(b).)

17   Seventh, State Farm violated Section 391 by failing basing the "typical negotiation discount" on

18   the "claimed difference between the asking price and reported sales prices of vehicles which is

19   obtained by Autosource from venders who in turn obtain it from dealers and state taxing and

20   licensing departments" which is purportedly "lower than the actual bonafide market clearing sale

21   prices due to trade-in value being removed and/or the underreporting of price to save on sales

22   tax." (Id. ¶ 1.15(c).)  Eighth, State Farm violated Section 391 by using the Autosource reports,

23   which average the discount data for all vehicles, "not vehicles of the same make, model, and/or

24

1   year, and is then separated into pre-set price bands, with the average difference in the unreliable

2   data being then rounded to reflect the claimed 'typical negotiation' discount for that price band."

3   (Id. ¶ 1.15(d) (emphasis omitted).) Ninth, State Farm's violated Section 391 when it applied a

4   "typical negotiation discount" based on Autosource data that has not been tested for its reliability

5   or accuracy. (Id. ¶ 1.15(e).)

6        Plaintiff Jama alleges that the "uniform 'negotiation fee' of 9 percent is without any

7   empirical foundation" and violates WAC 284-30-391 because the adjustment is not a "verifiable"

8   dollar amount as required by the regulations. (Compl. ¶¶ 5.29-5.30.) Plaintiff Jama also alleges

9   that the 9 percent negotiation reduction violates Section 391(2) because it is created using data

10  that fails to meet the location and timing rules in Section 391(2)(b)(iv). (Id. ¶ 5.32.) And, lastly,

11  Plaintiff Jama alleges that State Farm violated Section 391 by making a condition adjustment to

12  his car without inspecting the car or showing that the comparable vehicles were different in

13  condition from his. (Id. ¶¶ 5.28, 5.33.)[3]

14                                **Analysis**

15  A.    Legal Standard

16       Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a

17  claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

18  construe the complaint in the light most favorable to the non-moving party and accept all

19  well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney,

20  Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d

21  658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough

22

23  [3] Plaintiff Jama concedes that Section 391(5) "may not specifically prohibit a negotiation discount." (Dkt. No. 15 at 14.) The Court therefore does not consider any alleged violation of Section 391(5) to support any of Plaintiff Jama's claims.

24

1   facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

2   544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that

3   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4   alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

5   B.        Breach of Contract

6        State Farm seeks dismissal of all Plaintiffs' breach of contract claims on the theory that

7   Plaintiffs have not alleged any underlying violations of Section 391. None of State Farm's

8   attacks has merit.

9        1.        Legal standard

10       In Washington, courts "construe insurance policies as contracts, giving them a fair,

11   reasonable, and sensible construction as would be given to the contract by the average person

12   purchasing insurance." Xia v. ProBuilders Spec. Ins. Co., 188 Wn.2d 171, 181 (2017) (quotation

13   and citation omitted). To assert a breach of contract claim, a plaintiff must allege the existence of

14   a valid contract, a breach of the contract, and damages. See Meyers v. State, 152 Wn. App. 823,

15   827-28 (2009). The failure by an insurer to follow WAC requirements in settling an insurance

16   claim is a per se breach of contract. Van Noy v. State Farm Mut. Auto. Ins. Co., 98 Wn. App.

17   487, 495-96 (1999) aff'd, 142 Wn.2d 784 (2001).

18       This case requires construing the provisions of Section 391. The typical canons of

19   statutory interpretation apply to this task. Silverstreak, Inc. v. Wash. State Dep't of Labor &

20   Indus., 159 Wn.2d 868, 881 (2007). When applying basic statutory construction principles, the

21   "primary task is to determine which interpretation best reflects the intent of the legislature in

22   enacting the prevailing wage act and to give effect to that interpretation." Id. at 882.

23   Accordingly, "[a]s in statutory interpretation, where a regulation is clear and unambiguous,

24

1   words in a regulation are given their plain and ordinary meaning unless a contrary intent

2   appears." Id. And "a reviewing court has a duty to give meaning to every word in a regulation."

3   Id. at 884.

4          2.          Section 391 does not permit adjustments for a "typical negotiation discount"

5          State Farm argues that because the regulations define "actual cash value" as "fair market

6   value," a negotiation deduction can be applied to reflect the "realities of haggling." (Ngethpharat

7   Dkt. No. 16 at 6-7; Jama Dkt. No. 13 at 6-7.) But State Farm's argument is premised on a flawed

8   reading of Section 391 that violates the canons of statutory construction. Specifically, State Farm

9   asks the Court to ignore the specific, detailed methodologies in Section 391(2) that must be

10  followed to determine a comparable car's "actual cash value." See WAC 284-30-391(2)(b).

11  Instead, State Farm suggests that because the general definition of "actual cash value" means

12  "fair market value," it can apply a negotiation discount to determine the actual cash value of the

13  comparable car. This reading of the statute would render superfluous all of the detailed,

14  mandatory requirements of Section 391(2)(b) to determine the actual cash value of the loss

15  vehicle. This violates basic principles of regulatory construction. See Silverstreak, 159 Wn.2d at

16  884; State v. Roggenkamp, 153 Wn.2d 614, 624 (2005) ("Statutes must be interpreted and

17  construed so that all the language used is given effect, with no portion rendered meaningless or

18  superfluous.") (citation and quotation omitted). To give full effect to the language of Section

19  391(2), the Court finds that the "actual cash value" determination must comply with the

20  methodologies set forth in Section 391(2). This determines the "fair market value" of a

21  comparable vehicle, which is consistent with the general definition of "actual cash value" in

22  Section 320.

23

24

ORDER ON MOTIONS TO DISMISS - 10

1    State Farm's argument also fails to grapple with Section 391(2)(b)(ii), which expressly

2    says that the use of advertised prices to determine actual cash value is, in fact, an appropriate

3    methodology. And, notably, nowhere does this subsection state that negotiation deductions on

4    top of the advertised prices are permissible.

5    State Farm has failed to demonstrate why the alleged violations of Section 391(2) cannot

6    support Plaintiffs' breach of contract claims.

7        3.    Section 391(4)(b) does not permit a negotiation discount

8    As to the Ngethpharat Plaintiffs State Farm argues that it has not violated the settlement

9    procedures in Section 391(4)(b) for three reasons, none of which has merit.

10   First, State Farm argues Section 391(4)(b) provides a non-exclusive list of "deductions

11   for options, mileage or condition when determining comparability" and do not exclude additional

12   deductions. (Ngethpharat Dkt. No. 16 at 8) This requires looking at Section 391(4)(b) in full,

13   which states:

14       When settling a total loss vehicle claim using methods in subsections (1) through
         (3) of this section, the insurer must . . . [b]ase all offers on itemized and verifiable
15       dollar amounts for vehicles that are currently available, or were available within
         ninety days of the date of loss, using appropriate deductions or additions for
16       options, mileage or condition when determining comparability.

17   WAC 284-30-391(4)(b).

18   State Farm is correct that the Section 391(4)(b) does not say that these are the "only"

19   deductions. And State Farm is correct to distinguish Plaintiff's reliance on Durant v. State Farm

20   Mut. Auto. Ins. Co., 191 Wn.2d 1 (2018). Durant involved interpreting a different regulation

21   which specifically listed certain bases for denying personal injury protection claims as the "only

22   grounds." But State Farm's reading of Section 391(4)(b) would essentially allow insurers to

23   come up with any deductions they see fit—so long as they were "itemized and verifiable." This

24

1    would contravene the intent of the regulations and their authorizing statute requiring insurers to

2    act in "good faith, abstain from deception, and practice honesty and equity in all insurance

3    matters." RCW § 48.01.030. Reading Section 391(4)(b)'s deductions as exclusive gives full

4    effect to the insurance statute and regulations. See Silverstreak, 159 Wn.2d at 884. The Court

5    thus rejects State Farm's argument. See Zuern v. IDS Property Cas. Ins. Co., C19-6235MLP,

6    2020 WL 2114502, at *5 (May 4, 2020) ("A plain reading of the regulation suggests that the list

7    is exhaustive to the extent it provides the basis for deducting or adding to the value of a

8    comparable vehicle.")

9         Second, State Farm argues that Section 391(4)(b)'s list of deductions only applies to

10   assessing comparability, not determining the actual cash value of a comparable car. (Ngethpharat

11   Dkt. No. 16 at 8.) This argument does not give full effect to all of provisions in Section 391.

12   Comparability does, in fact, have application to determining the actual cash value. Section

13   391(2) mandates that a cash settlement offer use a "comparable motor vehicle" to determine "the

14   actual cash value." WAC 284-30-391(2). And Section 391(4)(b) list the deductions that can be

15   made to a comparable car. Reading these provisions together shows that to determine actual cash

16   value, the insurer must use a comparable motor vehicle's actual cash value reduced only by the

17   deductions listed in Section 391(4)(b).

18        Third, State Farm argues that if one defines "actual cash value" as the advertised price

19   adjusted only by deductions for options, mileage, or condition, then you read the general

20   definition of "actual cash value" as "fair market value" out of the WACs. This mirrors State

21   Farm's arguments made above as to Section 391(2), and is without merit. Section 391(2)'s

22   methodologies guide the insurer to arriving at a fair market value.

23

24

1    State Farm has failed to demonstrate why the alleged violations of Section 391(4)(b)

2    cannot support Plaintiffs' breach of contract claims.

3        The Court also rejects State Farm's attack to Plaintiff Jama's allegations that State Farm

4    violates Section 391(2) by applying a "typical negotiation" discount that fails to meet the

5    regulation's proximity and temporal requirements. (Dkt. No. 13 at 9 n.6.) State Farm relegates its

6    single-sentence argument to a footnote and provides no reasoning to justify dismissal. (Id.) State

7    Farm has not demonstrated why Plaintiff Jama's allegations cannot support his breach of

8    contract claim. (See Compl. ¶ 5.32.)

9        4.    As alleged, the negotiation discount is not verifiable

10       State Farm argues that the "typical negotiation discount" contained in the Autosource

11   reports is "itemized and verifiable" as required by Section 391(4)(b) because the discount can be

12   calculated by comparing the list price to the purchase price. The Court rejects this argument.

13       Before addressing the merits of this argument, the Court must define the meaning of both

14   "itemized" and "verifiable." The regulations do not define these terms, but the issue has been

15   considered already in this District: "Merriman Webster defines the term 'itemized' as 'to set

16   down in detail or by particulars; list' and defines 'verifiable' as to be able to 'establish the truth,

17   accuracy or reality of.'" Lundquist v. First Nat'l Ins. Co., C18-5301, Order on Order to Show

18   Cause and on Motion to Dismiss (Dkt. No. 33) at 8 (W.D. Wash. July 9, 2018). The Court adopts

19   these same definitions.

20       State Farm fails to show that the "typical negotiation discount" is "itemized" or

21   "verifiable." While the dollar amount of the "typical negotiation discount" is set forth in the

22   Autosource reports, it is not detailed and lacks sufficient information to allow the insured to test

23   its truth or accuracy. The reports do not disclose the methodology used to calculate the discount

24

1    or information to understand why a particular discount was applied to any given comparator

2    vehicle. For example, the Autosource report provided to Plaintiff Ngethpharat applied a 6%

3    negotiation reduction for two comparable cars and a 7% negotiation reduction for two others.

4    (FAC ¶ 1.16). The reports nowhere explain or provide information as to why the discounts were

5    different or whether they were accurate or truthful—the insured is left to guess. The Court finds

6    that all Plaintiffs have sufficiently alleged that the typical negotiation discount is not "itemized"

7    or "verifiable" as required by Section 391(4)(b), which supports their breach of contract claims.

8         Lundquist is instructive on this point. In that case, the plaintiff alleged that the insurer

9    violated Section 391(4)(b) by reducing comparable vehicle prices through an unverifiable

10   "condition" reduction without "regard to an of the individual characteristics of those comparable

11   vehicles (and without any explanation)." Lundquist, Order at 4. The Court found sufficient the

12   allegations that the insurer violated Section 391(4)(b) by failing to provide any information to

13   allow the insured to determine whether the reduction was accurate. Id. This was so despite the

14   insurer having listed the factors it considered in reaching the reduction amount. Id. State Farm

15   attempts to distinguish Lundquist by suggesting that the court found a Section 391(4)(b)

16   violation only because the condition reductions were the same dollar amount for three different

17   comparable vehicles and therefore arbitrary. But the Court in Lundquist made not such finding.

18   Even if it had, it would not obviate the conclusion that "[t]he term "verifiable" would be

19   rendered meaningless if it was not intended to allow the claimant an opportunity to establish

20   whether the dollar amount was accurate by disclosure of the amount." Id. at 8. That is precisely

21   what Plaintiffs allege here, and these allegations support their breach of contract claims.

22

23

24

1        5.        State Farm's alleged condition adjustment is impermissible

2        As to Plaintiff Jama, State Farm argues that it did not violate Section 391(4)(b) by

3    making an adjustment for the damaged car's condition. Plaintiff Jama's points out that without

4    inspecting his and the comparable cars, the condition adjustment is not "appropriate"—as

5    required by Section 391(4)(b)—because it "lacks sufficient empirical foundation, is arbitrary,

6    and falls far short" of Section 391. As alleged, State Farm provided no basis on which to verify

7    whether the perceived condition deduction was "appropriate." The Court finds Plaintiff Jama's

8    allegations sufficient to show a violation of Section 391(4)(b) and to sustain his breach of

9    contract claim.

10                                  *        *        *

11        State Farm has not demonstrated any pleading deficiencies related to the alleged

12   violations of Section 391. Accordingly, the Court DENIES State Farm's motion as to the breach

13   of contract claims.

14   C.      CPA Claim

15        State Farm's attack to Plaintiffs' CPA claims turns entirely on its argument that Plaintiffs

16   have not adequately alleged any violations of Section 391. As set forth in Section B, above, the

17   Court disagrees and finds the alleged violations of Section 391 adequately pleaded. The alleged

18   violations of Section 391 constitute per se CPA violations, satisfying the first two elements of the

19   claim. See Van Noy, 98 Wn. App. at 496; Hangman Ridge Training Stables, Inc. v. Safeco Title

20   Ins. Co., 105 Wash. 2d 778, 785-92 (1986) (holding that in a private CPA action must contain

21   allegations of: (1) an unfair or deceptive act, (2) that occurred in the conduct of trade or

22   commerce, (3) affecting the public interest, (4) injuring the plaintiff in her business or property,

23   (5) which defendant caused.). State Farm does not challenge the remaining three elements of

24

1   Plaintiffs' claims. Given the sufficiently-pleaded allegations that State Farm variously violated

2   Section 391, the Court DENIES State Farm's motions to dismiss the CPA claims.

3   D.       Plaintiff Jama's Claims Brought Directly Under Section 391

4          State Farm correctly asserts that Plaintiff Jama may not pursue claims directly under

5   Section 391 because the regulation provides no private right of action. The Court GRANTS State

6   Farm's Motion on this issue. But as set forth above, Plaintiff Jama is entitled to pursue his other

7   claims premised on the alleged violations of Section 391.

8   E.       Declaratory Relief

9          State Farm seeks dismissal of all Plaintiffs' request for declaratory relief, arguing that the

10  claim is "duplicative" of the breach of contract and CPA claims. (Ngethpharat, Dkt. No. 16 at 11;

11  Jama, Dkt. No. 13 at 11.) State Farm's argument misses the mark. As the Plaintiffs correctly

12  point out, they may pursue declaratory relief under 28 U.S.C. § 2201(a) "whether or not further

13  relief is or could be sought." See 28 U.S.C. § 2201(a). And Fed. R. Civ. P. 57 expressly states

14  that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is

15  otherwise appropriate." The Court DENIES State Farm's Motions as to Plaintiffs' declaratory

16  judgment claims.

17  F.       Injunctive Relief

18         State Farm seeks dismissal of Plaintiffs' separately-alleged claims for injunctive relief.

19  State Farm is correct that an injunction is a remedy for a CPA violation and not a separate cause

20  of action. The Court GRANTS the Motions and Court dismisses Plaintiffs' injunctive relief

21  claims. But the Court notes that the Plaintiffs may still seek injunctive relief as a remedy for the

22  CPA claims.

23

24

1    G.      State Farm's Request to Stay and Compel Appraisal

2           As an alternative, State Farm asks the Court to stay Plaintiffs' claims and compel

3    appraisal. The Court finds no basis to grant this relief.

4           State Farm fails to demonstrate why an appraisal would resolve the underlying legal

5    dispute. The Plaintiffs all make clear that they do not challenge the amount of the deduction—

6    just its legality. (Jama Dkt. No. 15 at 22; Ngethpharat Dkt. No. 18 at 18.) Ordering an appraisal

7    to determine the correct "negotiation discount" would not resolve the underlying dispute as to

8    whether any such discount is permissible under Section 391.

9           Rejection of State Farm's request finds support in a decision from this District involving

10   similar issues. See Stanikzy v. Progressive Direct Ins. Co., C20-118 BJR, Order Denying

11   Defendant's Motion to Compel Appraisal and to Stay Proceedings (Dkt. No. 30) (W.D. Wash.

12   May 29, 2020). In Stanikzy, the Court concluded that requiring an appraisal to determine the

13   amount of loss would be "an empty exercise" where the plaintiff did not challenge that amount

14   of a "projected sold adjustment," but challenged whether the adjustment itself violated Section

15   391(4)(b). Id. at 2-4. The appraisal "would not obviate Stanizky's [sic] claim that any projected

16   sold adjustment is illegal." Id. at 4 (emphasis in original). This reasoning applies equally here

17   and supports denial of State Farm's request. The Court DENIES State Farm's Motions and will

18   not compel appraisal.[4]

19   H.      The Ngethpharat Plaintiffs' Motion to Strike

20          The Ngethpharat Plaintiffs filed a surreply (Dkt. No. 27) asking the Court to strike: (1)

21   two declarations submitted with the State Farm's Reply (Dkt. Nos. 25 & 26); (2) new arguments

22

23   ──────────────

[4] The Court does not reach the issue of whether Plaintiff Ngethpharat's policy contains an
24   applicable appraisal provision.

1   raised in the Reply as to standing; and (3) State Farm's citation to nine cases in the Reply that

2   Plaintiffs claim were not addressed in the opening brief. The Court GRANTS in part and

3   DENIES in part the Motion

4          First, Plaintiffs are correct that the Court should not accept the declarations filed with the

5   Reply (Dkt. Nos. 25 and 26). Both raise facts that are far beyond the Amended Complaint and

6   are not the appropriate for judicial notice. And Plaintiffs correctly argue that the declarations

7   inappropriately raise new arguments for the first time on reply. See Docusign, Inc. v. Sertifi, Inc.,

8   468 F. Supp. 2d 1305, 1307 (W.D. Wa. 2006). The Court strikes the two declarations and has not

9   considered them in reaching its decision.

10          Second, Plaintiffs are correct that State Farm inappropriately raises a new argument in the

11   reply regarding possible standing issues. The Court strikes this argument and has not considered

12   it in reaching its decision.

13          Third, Plaintiffs have not demonstrated a valid basis for the Court to strike State Farm's

14   reliance on the nine cases mentioned in the Reply. The cases cited relate to the same arguments

15   raised in the opening brief. The Court has considered these cases in reaching its decision.

16                                              **Conclusion**

17          The Plaintiffs in these two cases have adequately alleged that State Farm's use of a

18   "typical negotiation discount" violates Section 391. These violations form the basis for their

19   breach of contract, CPA, and declaratory relief claims. State Farm is correct that stand-alone for

20   injunctive relief claims and claims brought directly under Section 391 must be dismissed. But the

21   Court finds no merit in State Farm's request to stay and compel appraisal, and denies the request.

22   As set forth above, the Court GRANTS in part and DENIES in part both Motions to Dismiss as

23   well as the Ngethpharat Plaintiffs' Motion to Strike.

24

1   The clerk is ordered to provide copies of this order to all counsel.

2   Dated November 9, 2020.

3   

4   Marsha J. Pechman
    United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTIONS TO DISMISS - 19