FILED UNDER SEAL

HONORABLE MARSHA J. PECHMAN
NOTED FOR: FEBRUARY 26, 2020

**UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

FAYSAL A. JAMA, on behalf of himself and
all others similarly situated,

    Plaintiff,

      vs.

STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY,

    Defendant.

Civil Action No. 2:20-cv-00652-MJP

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION

Noting Date: February 26, 2020

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 1

# I. RELIEF REQUESTED.

Plaintiff Faysal A. Jama brings this action against State Farm Fire and Casualty Insurance Company ("State Farm") and seeks certification of the following class, pursuant to Fed. R. Civ. P. 23:

> All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system, and (3) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

# II. INTRODUCTION.

This action arises from State Farm's practice of improperly valuing class members' totaled vehicles, thereby reducing the amount paid to its policyholders.  Under the Washington Administrative Code ("WAC"), when adjusting total loss claims using "actual cash value," the value of comparable vehicles used may be adjusted only for "options, mileage, or condition." WAC 284-30-391 ("Section 391"). Further, those adjustments must be itemized, explained, verifiable and appropriate in dollar amount. Although the statute only allows deductions for options, mileage, or condition, State Farm applies a fourth and unlawful deduction: typical negotiation.

In addition, although the statute authorizes condition adjustments, State Farm's are unverifiable and arbitrary, failing to account for the actual condition of comparable vehicles.

The Plaintiffs' allegations satisfy the requirements of Rule 23 and are especially well-suited for class treatment. State Farm admits the putative class may consist of at least 8000 members. Dkt. #1-4, ¶9.   State Farm also admits that it used the subject total loss adjustment

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 2

system, called "Autosource," throughout the six-year class period. Deposition of Douglas Graff, 29:7-20. By doing so, State Farm's conduct presents several common factual and legal questions, including whether its total loss valuation system violates WAC 284-30-391, is an "unfair or deceptive practice" for purposes of the Consumer Protection Act RCW 19.86.020, or violates the insurer's duty of good faith and fair dealing.  Finally, the Plaintiff's claim is typical of the class, is committed to vigorously prosecuting this action, and is represented by well-qualified counsel.

Class treatment is also warranted under Rule 23(b)(3) because many putative class members are unaware a valid claim exists, and if they are, the economic value is too low to pursue a costly-individual action against a well-defended national corporation like State Farm. Class treatment would also provide an equitable method of resolving distinct issues, such as State Farm's liability, while preserving the Parties' due process rights and not wasting judicial resources.

### III. FACTS.

**A. Legal Background.**

The Washington legislature has found that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030.  To that end, it authorized the Washington Insurance Commissioner to promulgate regulations which define unfair or deceptive methods, acts, and practices in the business of insurance.  *Id.* One such regulation is at issue in this case – Section 391, which establishes the lawful standards of practice for the settlement of automobile total loss claims. Dkt. #29, pg. 5, Orders on Motion to Dismiss. These two standards work in tandem and impose intertwined, but independent requirements on the insurer. *Id.*

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 3

FILED UNDER SEAL

Section 391 states: "unless an agreed value is reached, the insurer must adjust and settle vehicle total losses using the methods set forth in subsections (1) through (3) of this section." WAC 284-30-391. At issue in this case is Section 391's "cash settlement" methodology. *Id.*, §2. This provision permits the insurer to "settle a total loss claim by offering a cash settlement based on the actual cash value of a comparable motor vehicle, less any applicable deductible provided for in the policy." *Id*.

Section 391(2) includes two key provisions to determine actual cash value of a comparable motor vehicle. First, to determine the actual cash value, "only a vehicle identified as a comparable motor vehicle may be used." WAC 284-30-391(2)(a). Second, the insurer must "determine the actual cash value of the loss vehicle by using any one or more of the following methods": (1) comparable motor vehicle; (2) licensed dealer quotes; (3) advertised data comparison; or (4) computerized sources. WAC 284-30-391(2)(b)(i)-(iv).

Insurance regulations define the term "actual cash value" to mean "the fair market value of the loss vehicle immediately prior to the loss" (WAC 284-30-320(1)) and define "comparable motor vehicle" as "a vehicle that is the same make and model, of the same or newer model year, similar body style, with similar options and mileage as the loss vehicle and in similar overall condition, as established by current data." WAC 284-30-320(3). This definition also states that "[t]o achieve comparability, deductions or additions for options, mileage or condition may be made if they are itemized and appropriate in dollar amount." *Id*.

Section 391 also "establish[es] standards of practice for the settlement of total loss vehicle claims" which the "insurer must" follow. WAC 284-30-391(4). Relevant here is Section 391(4)(b), which says that the insurer must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available, or were available within ninety days of the date of loss, using

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 4

appropriate deductions or additions for options, mileage or condition when determining

comparability."

In response to State Farm's motions to dismiss, the Court ruled:

(1) That Section 391(2) does not permit adjustments for a typical negotiation discount:

> State Farm's argument is premised on a flawed reading of Section 391 that violates the
> canons of statutory construction. Specifically, State Farm asks the Court to ignore the
> specific, detailed methodologies in Section 391(2) that must be followed to determine
> a comparable car's "actual cash value." See WAC 284-30-391(2)(b)…  To give full
> effect to the language of Section 391(2), the Court finds that the "actual cash value"
> determination must comply with the methodologies set forth in Section 391(2). This
> determines the "fair market value" of a comparable vehicle, which is consistent with
> the general definition of "actual cash value" in Section 320…  State Farm's argument
> also fails to grapple with Section 391(2)(b)(ii), which expressly says that the use of
> advertised prices to determine actual cash value is, in fact, an appropriate
> methodology. And, notably, nowhere does this subsection state that negotiation
> deductions on top of the advertised prices are permissible.

(2)  That Section 391(4)(b) does not permit a typical negotiation discount:

> State Farm's reading of Section 391(4)(b) would essentially allow insurers to come up
> with any deductions they see fit—so long as they were "itemized and verifiable." This
> would contravene the intent of the regulations and their authorizing statute requiring
> insurers to act in "good faith, abstain from deception, and practice honesty and equity
> in all insurance matters." RCW § 48.01.030…  Reading these provisions together
> shows that to determine actual cash value, the insurer must use a comparable motor
> vehicle's actual cash value reduced only by the deductions listed in Section 391(4)(b).

(3) That the typical negotiation discount is not "verifiable" as required by Section 391(4)(b):

> While the dollar amount of the "typical negotiation discount" is set forth in the
> Autosource reports, it is not detailed and lacks sufficient information to allow the
> insured to test its truth or accuracy. The reports do not disclose the methodology used
> to calculate the discount or information to understand why a particular discount was
> applied to any given comparator vehicle…  [t]he term "verifiable" would be rendered
> meaningless if it was not intended to allow the claimant an opportunity to establish
> whether the dollar amount was accurate by disclosure of the amount."

Dkt. #29, pgs. 10-13.

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 5

**B. Factual Background.**

    **1. Plaintiff's Total Loss Claim.**

    Plaintiff contracted with State Farm for an automobile insurance policy providing coverage for physical damage for his 2009 Honda Civic Hybrid sedan. *See* Declaration of Faysal Jama, ¶2. On May 25, 2019, Plaintiff's Honda Civic sustained damage which State Farm deemed a total loss. *Id*, Ex. A. State Farm "selected Audatex, an independent vehicle valuation company, to prepare a comprehensive vehicle valuation for your vehicle." *Id*., Ex. B. In the "Valuation Detail" section of the Autosource report, Audatex identified four different "comparable" vehicles, identifying the year, make, model, location, transmission, and odometer reading of each vehicle. *Id*. Autosource then adjusted the value of comparable vehicles to account for differences with the Plaintiff's vehicle, including mileage and options. *Id*. The value of these comparable vehicles was then used to establish the alleged "actual cash value" of Plaintiff's vehicle. *Id*.

    For each "Comparable" vehicle cited and described in the report, the "base" price (before adjustments) was almost exactly 9 percent lower than the stated "advertised price" for the vehicle. *Id*. The source of this 9 percent reduction in price was found in the Report's fine print, which claimed that each vehicle's "advertised price" was "adjusted to account for typical negotiation." *Id*. State Farm does not disclose how it verified that 9 percent is a fair or accurate "adjustment." *Id*.

    After adjusting the advertised prices of the "Comparable" vehicles for "typical negotiation," mileage and options, the Autosource report then took an additional deduction of $155.00 for the apparent atypical condition of Mr. Jama's vehicle. *Id*. This deduction was made without Autosource or State Farm performing any inspection to determine the condition of the "Comparable" vehicles. Deposition of Neal Lowell, 148:22-150:6.

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 6

**2. State Farm's Total Loss Practices.**

Since at least 2014, State Farm has almost exclusively used the Audatex Autosource system to value total loss claims in Washington State. Deposition of Douglas Graff, 29:7-30:9, 32:9-23 (estimating Autosource used in 99% of all total loss claims). Unless vehicles were rare or unusual, an Autosource valuation was the first step in determining a vehicle's actual cash value. *Id.*, 30:24-32:21. To determine that value, the Autosource report pulled data regarding the advertised price of comparable vehicles. *Id.*, 45:6-24. From that value, Autosource automatically deducted value to account for alleged "typical negotiation." *Id.*, 45:21-46:3. The typical negotiation adjustment was a set percentage of the comparable vehicle's advertised price. Jama Dec., Ex. B. State Farm relied on Autosource to calculate the typical negotiation adjustment, but understand it was based on data from outside Washington and older than 90 days. Graff Dep., 113:15-114:16. State Farm made no effort to verify the accuracy of Audatex's methodology. *Id.*, 127:3-21.

Prior to 2020, Audatex's typical negotiation adjustment was calculated on a regional basis, combining data from approximately 6-7 states. Lowell Dep., 48:18-49:2. Beginning in 2020, Audatex began excluding sale-price data from Washington State in its calculation of the typical negotiation adjustment. *Id.*, 137:3-24. Prior to that change, Audatex could not verify that Washington State data did not include trade-ins or other factors that depressed and skewed reported sale-price values. *Id.* In short, before 2020, Audatex's Washington State calculation of typical negotiation included data which exaggerated the apparent difference in advertised vs. sale-price. Beginning 2020, the Audatex's typical negotiation calculation does not incorporate *any* Washington State data.

Similarly, Audatex's method for calculating condition adjustments is unverifiable and arbitrary. For example, in the case of Mr. Jama's total loss claim, the Autosource report "assumes" that all four comparable vehicles are in typical condition, without any inspection or

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 7

confirmation. Lowell, 151:12-152:2. Audatex's assumed "typical" condition is based on

historical inspections performed by insurance adjusters and appraisers. *Id*., 155:25-156:19,

170:15-24. Audatex does not require these "inspectors" be licensed or certified. *Id*. According to

Audatex, its historical data is not limited to the condition of comparable vehicles sold within

ninety (90) days, as required by Section 391. *Id*., 160:4-18.

      To assign values to the difference in value between the condition of each vehicle

component (ex. minor vs. moderate wear on seats), Audatex breaks down the components into

twelve categories. *Id*., 162:16-164:11. Each category is assigned a percentage of the vehicle's

market value. *Id*. Within those percentages, each condition state (ex. good, minor damage,

moderate damaged, needs replacement) are assigned their own percentage. *Id*. These percentages

have not changed in the last ten years and were constant throughout the Class Period. *Id*. At

deposition, Audatex admitted it does not know the method used to set the percentages and assign

value to distinct vehicle components. *Id*., 164:2-11 ("I do not know how they were individually

established. I believe we know who, but not how.")  To summarize, Autosource's condition

adjustments rely heavily on historical data provided by insurer's own adjusters and appraisers,

and a "secret sauce" of arbitrary percentage values. This method is neither verifiable, nor lawful

under Section 391.

      The value of damages for both the typical negotiation and condition adjustments are

easily determinable based on data possessed by State Farm and Audatex. *See* Declaration of Dr.

Paul Torelli.

**C. Commencement of This Action.**

      On March 10, 2020, Mr. Jama on behalf of himself and others similarly situated, filed a

class action complaint in King County Superior Court against State Farm, alleging 1) breach of

contract, 2) insurer bad faith, 3) breach of the duty of good faith and fair dealing, 4) violation of the Washington Consumer Protection Act ("CPA"), and 5) declaratory judgment. Dkt. #1-3.

On April 29, 2020, State Farm removed the action to this Court, citing the Class Action Fairness Act ("CAFA), codified as 28 U.S.C. §1332, 1441, and 1446.  Dkt. #1.

On May 29, 2020, Progressive moved the Court to dismiss all of Mr. Jama's claims. Dkt. #13. On November 9, 2020, the Court denied that motion in part, allowing Mr. Jama's claims for breach of contract, violation of the CPA, and declaratory relief to proceed. Dkt. #29, pg. 18. The Court also noted that Mr. Jama may seek injunctive relief as a remedy under the CPA. *Id*.

## IV. DISCUSSION.

**A. Plaintiffs' Claims Satisfy the Requirements of Rule 23.**

Under Rule 23, certification is warranted when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). After satisfying the four requirements of Rule 23(a), the proposed class must also meet one of the requirements of Fed. R. Civ. P. 23(b). *See Edwards v. Ford Motor Co.*, No. 13-55331, 2015 U.S. App. LEXIS 3073 (9th Cir. Feb. 27, 2015).

In considering certification, courts may "consider the merits [of plaintiff's claims] only to the extent that they overlap with the requirements of Rule 23…" and allow the court to make an informed ruling. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Mendis v. Schneider Nat'l Carriers, Inc.*, No. C15-0144-JCC, 2017 U.S. Dist. LEXIS 17291, at *3 (W.D. Wash. Feb. 7, 2017). This does not permit "free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 9

308 (2013). Rather, the core purpose of class certification is to select a fair and efficient method for adjudicating the controversy. *Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1112 (9th Cir. 2014); *see also* Fed. R. Civ. P. 23 advisory committee's note (2003) ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision").

Further, evidentiary rules are not strictly applied when considering certification. *Rollins v. Traylor Bros.*, No. C14-1414 JCC, 2016 U.S. Dist. LEXIS 7294, at *7 (W.D. Wash. Jan. 21, 2016). The evidentiary record has not been fully developed through discovery, and the evidence will be subjected to greater scrutiny post-certification. *Id*.

**B. Core Allegations of Plaintiffs' Claims.**

**1. WAC 284-30-391 Establishes a Regulatory Framework for the Adjustment of Total Loss Claims.**

Section 391 establishes the methods by which an insurer "must adjust and settle vehicle total losses" and the standards of practice for the settlement of total loss vehicle claims. Dkt. #29, pg. 5. Section 391's "cash settlement" methodology permits the insurer to "settle a total loss claim by offering a cash settlement based on the actual cash value of a comparable motor vehicle, less any applicable deductible provided for in the policy." WAC 284-30-391(2). As to standard of practice, insurer's offers must be based on "itemized and verifiable dollar amounts for vehicles which are currently available…" *Id*., §(4)(b). These two standards work in tandem and impose intertwined, but independent requirements on the insurer. Dkt. #29, pg. 5.

**2. State Farm's Conduct Breached Its Contractual Obligations Under the Policy.**

In Washington, an insurance policy is construed as a contract, and given "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Xia v. Probuilders Specialty Ins. Co.,* 188 Wash. 2d 171 (2017) *as modified* (Aug. 16,

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 10

2017) (*quoting Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.,* 124 Wash. 2d
618, 627 (1994)).  To asset a claim for breach of contract, a plaintiff must allege the existence of a
valid contract, a breach of the contract, and damages. *Meyers v. State.* 152 Wash. App. 823, 827-
828 (2009). Violations of WAC requirements when adjusting insurance claims are *per se* breaches
of contract.  *Van Noy v. State Farm Mut. Auto Ins. Co.,* 98 Wash. App. 487, 495-96 (1999) *aff'd*
142 Wash. 2d 784 (2001).

State Farm's violations of Section 391 are *per se* breaches of their insurance contracts with
the Plaintiff and putative Class.  Recoverable damages include the difference between the amount
State Farm paid for total loss claims and the "actual cash value" of the vehicle, as determined by
the methodology set forth in Section 391, as well as any other economic damages incurred as a
result of the breach.

### 3. State Farm's Conduct Breaches Its Duties of Good Faith to the Plaintiff and the Class.

#### a. Common Law Duty of Good Faith.

Under Washington law, every contract includes an implied duty of good faith and fair
dealing. *Rekher v. State Dep't of Soc. & Health Servs.,* 180 Wash. 2d 102, 112 (2014). This duty
obligates the parties to cooperate so that each may obtain the full benefit of performance. *Id.* In an
insurance setting, the insurer violates this duty when it acts dishonestly or overemphasizes its
pecuniary interests. *Coventry v. Am. States Ins. Co.*, 136 Wn.2d 269, 280, 961 P.2d 933, 938 (1998). The
duty of good faith also requires that an insurer's actions not frustrate the purpose of the contract,
defeat the reasonable expectations of the insured, or violate custom or practice in the industry.
*Microsoft Corp. v. Motorola, Inc.,* 963 F. Supp. 2d 1176 (W.D. Wash. 2013).

To prevail on a common law claim for bad faith handling of an insurance claim, the

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 11

**Law Office of**
**Daniel R. Whitmore, PS**
6840 Fort Dent Way, Ste. 210
Seattle, WA 98188
(206) 329-8400 / (206) 329-8401 (FAX)

insured must establish duty, breach, causation, and proximate cause. *Fire & Marine Ins. Co. v. Onvia, Inc*., 165 Wash. 2d 122, 129, 196 P.3d 664 (2008). The common law duty of good faith between an insurer and an insured is akin to a fiduciary duty. *Tank v. State Farm Fire & Cas. Co*., 105 Wash. 2d 381, 385-86, 715 P.2d 1133 (1986). That duty applies to both first-party and third-party coverage. *Coventry*, 136 Wash. 2d 269, 961 P.2d 933 (1998). This common law duty implies more than mere "honesty and lawfulness of purpose." *Onvia, Inc*., 165 Wash. 2d 122, 129, 196 P.3d 664, 667 (2008).

### b. State Farm's Bad Faith Conduct.

Absent a request for appraisal, throughout the relevant six-year Class period, State Farm exclusively used the Audatex system to determine the value of total loss claims. Graff Dep*., 29:7 – 30:4; Trivett Dec., Ex. 2. This system reduced their insureds' recovery by taking an unverified typical negotiation adjustment in violation of Section 391. Jama Dec., Ex. B; Lowell Dep. 137:3-139:10 (prior to 2020, Autosource's Washington sales data included trade-in transactions, which depress the reported sale-price of comparable vehicles). This system also reduced their insured's recovery by adjusting for the damaged car's condition that lacked sufficient empirical foundation and fail to meet Section 391's proximity and temporal requirements. *Id*., 36:17-39:3.

### 4. State Farm's Conduct Violates the Washington Consumer Protection Act.

The five elements of a CPA claim are: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to the plaintiff; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wash. 2d 778, 785-90, 719 P.2d 531 (1986). State Farm's violations of Section 391 constitute *per se* CPA violations, satisfying the first two elements of the claim.  *See Van Noy,* 98 Wash. App. at 496; *Hayden v. Mut. of Enumclaw Ins. Co*., 141 Wash. 2d 55, 62, 1 P.3d 1167 (2000). Under RCW

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 12

FILED UNDER SEAL

48.01.030, the third element is satisfied because the legislature has declared that insurance is a business affected by the public interest. *Ins. Co. of State of Pa. v. Highlands Ins. Co*., 59 Wash. App. 782, 786, 801 P.2d 284 (1990). As to the fourth element, putative class members suffered a concrete injury in fact because they received less for their total loss claim than they should have. *Peoples v. United Servs. Auto Ass'n,* 194 Wash. 2d 771, 779, 452 P.3d 1218 (2019) (the wrongful deprivation of contracted-for insurance benefits is an injury in fact.)

**D. Plaintiff's Allegations Satisfy the Certification Requirements Set Forth in Rule 23.**

**1. Commonality.**

Fed. R. Civ. P 23(a)'s commonality requirement is satisfied where putative class members present a common question susceptible to a common answer. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011); *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (commonality is met if plaintiffs' grievances share a common question of law or fact). Individual factual differences among litigants will not preclude a finding of commonality. *Id*., citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality is a relatively low threshold to meet. *LaCasse v. Wash. Mut., Inc*., 198 F. Supp. 2d 1255, 1261 (W.D. Wash. 2002). A class meets the commonality requirement when "the common questions it has raised are 'apt to drive the resolution of the litigation' no matter their number." *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 (9th Cir. 2014).  A "single common issues is sufficient to meet the commonality requirement." *See Kirkpatrick v. Ironwood Commc'ns, Inc.* No C05-1428JLR, 2006 WL 2381797 at *3 (W.D. Wash. Aug. 16, 2006).

When a defendant engages in a "common course of conduct" by, as here, paying total loss claims based on Autosource estimates that include unverifiable deductions for typical negotiation and condition, the commonality element is satisfied.  *Brown v. Brown*, 6 Wash. App.

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 13

249, 255, 492 P.2d 581 (1971); *Pellino v. Brink's Inc*., 164 Wash. App. 668, 682, 267 P.3d 383 (2011).

State Farm's total loss claims handling practices and procedures, which included using Autosource reports with a "typical negotiation adjustment" and unsupported condition adjustments, were uniformly implemented during the class period.  "[G]enerally and materially speaking, we've been pretty much following the same process in Washington.  There's been no substantive or significant change that I can recall that's relevant to this matter." Graff Dep., 147:5-9. This generates a set of common questions including:

- Did State Farm's total loss valuation methodology and practice violate WAC 284-30-391?

- Does State Farm's practice constitute bad faith under Washington State's insurance statues and regulations?

- Does that practice violate Washington's Consumer Protection Act?

- Does that practice amount to breach of the contract?

**2. Numerosity.**

Numerosity exists if the class is so numerous that joinder of all members is "impracticable," meaning difficult or inconvenient; it need not be impossible.  FRCP 23(a)(1); *Rodriguez v. Carlson,* 166 F.R.D. 465, 471 (E.D. Wash. 1996). The plaintiff "need not show the exact number of potential members in order to satisfy" the numerosity requirement. *See Mortimore v. F.D.I.C*., 197 F.R.D. 432, 435 (W.D. Wash. 2000); *McClusky v. Trustees of Red Dot*, 268 F.R.D. 670, 673 (W.D.Wash. 2010) (certifying class comprising twenty seven known members at the time).  As a "general rule, a potential class of 40 member is considered impractical to join." *Ali v. Menzies Aviation, Inc*., No. 2:16-cv-00262RSL, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) (citing *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 14

Cir. 1986)). According to its Notice of Removal, State Farm identified at least "8,004 total-loss claims and insureds that fall within Plaintiff's class definition." Dkt. #1-4, ¶9.

### 3. Typicality.

FRCP 23(a)(3) requires that the claims of the representative party be "typical" of the claims of the class. The purpose of the typicality requirement is the assure that the interest of the named representative aligns with the interests of the class. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The test for typicality is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon,* 976 F.2d at 508; *Just Film, Inc. v. Buono,* 847 F.3d 1168, 1175 (9th Cir. 2010).

Here, Mr. Jama and his fellow putative Class Members have materially identical insurance policies, all governed by Section 391. State Farm has been following the same claims handling processes in Washington without "substantive or significant change" during the class period. *Graff Dep., A,* 147:6-9. Thus, Mr. Jama and all other members of the proposed class were subjected to the same course of conduct designed to pay less on total loss claims by using the "typical negotiation" adjustment hidden in the Autosource reports and the arbitrary, unsupported "condition adjustment." Jama, Ex. B. Mr. Jama's claims are therefore typical of those of the Class. The relief Mr. Jama seeks for himself is the same as that which he seeks for the Class. The only variation among the class members relates to the <u>amount</u> wrongfully deducted.

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 15

FILED UNDER SEAL

Although individual issues may arise as to Plaintiffs' and class members' individual damages, this does not preclude certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 513 (9th Cir. 2013) (denying certification because "the damages inquiry will be highly individualized" is an abuse of discretion.)

**4. Adequacy of Representation.**

**a. Adequacy of Class Representatives.**

To determine whether the adequacy requirement is met, courts are guided by two questions: (1) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class, and (2) do the named plaintiffs and their counsel have any conflicts of interest with other class members? *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). It is presumed that the interests of the representative plaintiff do not conflict with those of the Class Members, and that counsel is adequate to represent those interests.  H. Newberg & A. Conte, *Newberg on Class Actions,* §3.05 at 3-25 (3d ed. 1992).

In this case, there is no evidence of any conflict. Plaintiff Jama has a significant interest in the outcome of this matter and is determined to vigorously advance his interests, as well as those of the putative class members. *See* Declaration of Faysal Jama, ¶¶ 10, 12, Ex. C. The Plaintiff, just like the putative Class, seeks to prove that State Farm's practices were unfair, deceptive, and illegal, and with the assistance of counsel, will make a diligent and focused effort to do so. *Id.*

**b. Adequacy of Counsel.**

The Plaintiff's counsel are skilled litigators with substantial experience prosecuting class action lawsuits in this jurisdiction. *See* Declarations of Daniel Whitmore and Trivett Dec., ¶2-7. They, just like the Plaintiffs, are committed to vigorously advocating for the interests of putative

**Law Office of
Daniel R. Whitmore, PS**
6840 Fort Dent Way, Ste. 210
Seattle, WA 98188
(206) 329-8400 / (206) 329-8401 (FAX)

FILED UNDER SEAL

Class Members. *Id*. Accordingly, the requirements for adequate representation are met.

**E. FRCP 23(b)(3) Requirements.**

Plaintiffs seek certification under Rule 23(b)(3). A class may be certified under this section if: (1) common questions of law and fact predominate, and (2) if class treatment is a superior method of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The "predominance" and "superiority" prongs of Rule 23 work together to ensure that certifying a class "would achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotation omitted).

**1. Common Questions of Law and Fact Predominate Plaintiffs' Claims.**

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons, Inc.* 835 F.3d 1125, 1134, (9th Cir. 2016). The existence of common questions is judged by whether "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* There is no single qualitative or quantitative test for predominance; rather, the Court pursues a pragmatic inquiry as to whether common questions represent a significant aspect of the case. *Kelley v. Microsoft Corp.,* No. C07-0475MJP, 2009 WL 973368 at *4 (W.D. Wash. April 10, 2009) *rev'd on other grounds* 395 Fed. Appx. 431 (9th Cir. 2010). "It is particularly appropriate to use the class action procedure" when the "case involves the use of form contracts" such as insurance policies. *Mortimore v. F.D.I.C.,* 197 F.R.D. 432, 438 (W.D. Wash. 2000).

Common issues clearly predominate here. With respect to liability, the overriding

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 17

common question is whether State Farm's deductions for "typical negotiation" and method of

calculating condition adjustments violated Section 391.  Such a regulatory violation would be a

*per se* breach of contract, a *per se* violation of the CPA, and irrefutable evidence of bad faith

claims handling.

### a. Individualized Damages Do Not Defeat Commonality or Predominance.

"[I]ndividual damage questions do not preclude a Rule 23(b)(3) class action when the

issue of liability is common to the class." *In re NCAA I-A Walk-On Football Players Litig.,* No.

C04-1254C, 2006 WL 1207915 at *9 (W.D. Wash. 2006); *Leyva v. Medline Indus. Inc.,* 716 F.3d

510, 513 (9th Cir. 2013)("In almost every class action, factual determinations of damages to

individual class members must be made.  Still we know of no case where this has prevented a

court from aiding the class to obtain its just restitution.  Indeed, to decertify a class on the issue

of damages or restitution may well be effectively to sound the death knell of the class action

device."); 6 A. Conte & H. Newberg, *Newberg on Class Actions* § 10:2 (4th ed. 2002)

("individual damages issues should not, except in extraordinary circumstances, have any adverse

effect on the propriety of aggregate class judgments as a proper means for determining the

defendant's liability to the class.").

Although Plaintiff and Class Members' individual damages may vary, the amount of their

individual and aggregate damages can be calculated using available, objective information

contained in State Farm's own electronic records and the Autosource reports themselves. Thorpe

Dep., 32:20-33:15; Jama Dec., Attachment B.  Plaintiff can easily calculate each Class Member's

damages by examining the relevant Autosource data and performing simple math. *See* Torelli

Declaration.  In the alternative, Plaintiff could sample the files to determine the aggregate total

loss, and then determine a method for distributing damages pro rata based on a representative

sample. *Id*.

Contrary to expected arguments from State Farm, statistical proof of damages is well

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 18

accepted in Washington and Federal law. *See Moore v. Health Care Auth.,* 181 Wash. 2d 299, 332 P.3d. 461, 466 (2014).  It is "not necessary to prove each plaintiff's damages on an individual basis; it is possible to assess damages on a class-wide basis using representative testimony." *Chavez v. Our Lady of Lourdes Hospital at Pasco,* 190 Wash. 2d 507, 519, 415 P.3d 224 (2018).  To be clear, Plaintiff asserts that sufficient individualized data exists to allow the calculations of damages without the need for representative samples.

### 2. Class Treatment is Far Superior to Individual Actions.

"A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234-35 (9th Cir. 1996). This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution. *Hanlon,* 150 F.3d at 1023. Here, the alternative is thousands of separate actions encompassing all the same issues of this case. In opposing certification, State Farm presumably hopes that most putative class members will never learn of the insurer's wrongful practices and the existence of a valid claim, thereby allowing State Farm to avoid accountability.

### a. Class Treatment Is More Equitable and Efficient.

Individual adjudication would force duplicative lawsuits, burdening the court system and leading to inconsistent outcomes. If filed individually, each plaintiff would be forced to re-litigate the same core injury: State Farm's repeated violations of Section 391 when adjusting total loss claims. The actions' similarities would make such an effort, even if it could be undertaken, especially wasteful for both plaintiffs and Progressive.

### b. Putative Class Members Lack Sufficient Interest to Pursue Separate Actions.

State Farm will likely argue that because Plaintiff's and the Class Members' claims carry the mere possibility of exemplary damages and attorney's fees, individual interest warrants

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 19

denial of class certification. Few attorneys, let alone lay class members, understand the minutiae

of Washington's regulatory scheme for valuing total loss claims, and that a valid cause of action

exists under WAC 284-30-391.  If the individual interest were as high as State Farm will likely

assert, putative class members would have already filed separate actions. At this time, Plaintiff is

is not aware of any individual action filed against State Farm for violation of WAC 284-30-391

other than the companion class action case of *Ngethpharat v. State Farm Mut. Auto. Ins. Co.*,

W.D. Wash Cause No. 2:20-cv-00454-MJP. Similarly, State Farm is not aware of any other

individual or class action claims in Washington pertaining to the "typical negotiation

adjustment." Graff Dep., 266:19-22. *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 560 (W.D.

Wash. 2008) (court notes the absence of similar litigations when considering individual interest);

*see also* Fed. R. Civ. P. 23(b)(3)(b).

In this case, many class members will fail to pursue individual claims, either because they

are unaware that a claim exists or because litigation costs outvalue their compensatory damages.

*See Wolin v. Jagu-ar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (courts

favor certification when individual recovery would be dwarfed by litigation costs).  In its Notice

of Removal, State Farm estimated that its total loss valuation methodology resulted in aggregate

underpayments of total loss claims of $7,138,923.28.  Dkt. #1, pg. 7. With a putative class of

8004 individuals, the average value of denied benefits is $891.92. This is consistent with the 9%

typical negotiation adjustment taken in Mr. Jama's case. Jama Dec., Ex. B.  There relatively

small values suggests that each class member will not have "significant interest in litigating his

or her claims separately." *Nugussie v. HMS Host of N. Am.*, No. C16-268RSL, 2016 U.S. Dist.

LEXIS 186549, at *9 (W.D. Wash. Nov. 29, 2016) citing *Brown v. Consumer Law Associates,

LLC*, 283 F.R.D. 602, 615-16 (E.D. Wash. 2012) (holding that class adjudication of class

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 20

FILED UNDER SEAL

members' claims was superior to separate individual actions when the claims were "relatively small," in the range of $5,000 to $10,000). In addition, the Rule 23(b)(3) framework safeguards the due process rights of Class Members by providing the opportunity to opt-out. *Dukes*, 131 S. Ct. at 2559 (2011).

When considering the economics of individual interest, the possibility of treble or exemplary damages should be given little weight.  State Farm admits "individual lawsuits on a property damage total loss or collision loss are kind of rare. We don't see a lot of them." *Dec. of Graff,* 266:23-25. Individual treatment would be inefficient and would only serve to increase the Court's caseload.

### c. The Putative Class Is Manageable.

This case is manageable as a class action.  Liability will be established through common evidence of State Farm's uniform, state-wide method for valuing total loss claims, as well as common evidence as to how the insurer's typical negotiation and condition adjustments violate Section 391.  There is no variation in the evidence to be presented on these issues between Class Members.  Damages can be easily calculated through analysis of retrievable data from State Farm and Audatex, or through statistical sampling.

### V. CONCLUSION

For the reasons set forth above, Plaintiff asks the Court to grant his motion to certify this matter as a class action.  He further asks that he be appointed to serve as class representative and that the undersigned counsel be appointed class counsel.

PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION - 21

FILED UNDER SEAL

Dated this 29th day of January, 2021

              LAW OFFICES OF DANIEL R. WHITMORE, PS

              /s/ *Daniel R. Whitmore*_____
              Daniel R. Whitmore, WSBA No.24012
              6840 Fort Dent Way, #210
              Tukwila, WA 98188
              Telephone:    206-329-8400
              Facsimile:    206-329-8401
              Email:      dan@whitmorelawfirm.com
              Attorney for Plaintiff and Class

              BADGLEY MULLINS TURNER, PLLC

              /s/ *Duncan C. Turner*_____
              Duncan C. Turner, WSBA No.20597
              19929 Ballinger Way NW, #200
              Seattle, WA 98155
              Telephone:    206-621-6566
              Facsimile:    206-621-9686
              Email:      dturner@badgelymullins.com
              Attorney for Plaintiff and Class

              BADGLEY MULLINS TURNER, PLLC

              /s/ *Mark A. Trivett*_____
              Mark A. Trivett, WSBA No. 46375
              19929 Ballinger Way NW, #200
              Seattle, WA 98155
              Telephone:    206-621-6566
              Facsimile:    206-621-9686
              Email:      mtrivett@badgelymullins.com
               Attorney for Plaintiff and Class

FILED UNDER SEAL

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on the 29th day of January, 2021, he caused a true and correct copy of the above-titled document to be delivered via the method indicated below to the following party(ies):

| | |
|---|---|
| Joseph D. Hampton, WSBA #15297 | [X] ECF via the Court E-Filing System |
| Matthew Munson, WSBA #32019 | [ ] U.S. Mail |
| **Betts, Patterson & Mines, P.S.** | [ ] Legal Messenger |
| One Convention Place | [ ] Facsimile |

701 Pike Street, Suite 1400
Seattle, WA 98101-3927
Phone: 206.292.9988
Fax:     206.343.7053
Email: jhampton@bpmlaw.com
         mmunson@bpmlaw.com

Peter W. Herzog III (*pro hac vice*)
**Wheeler Trigg O'Donnell LLP**
211 N. Broadway, Suite 2825
St. Louis, Missouri 63102
Phone: 314.326.4128
Fax:     303.244.1879
Email: pherzog@wtotrial.com

Eric L. Robertson (*pro hac vice*)
**Wheeler Trigg O'Donnell LLP**
370 17th Street, Suite 4500
Denver, Colorado  80202-5647
Phone: 303.244.1842
Fax:     303.244.1879
Email: robertson@wtotrial.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

s/ Yonten Dorjee
Yonten Dorjee, Paralegal
**BADGLEY MULLINS TURNER PLLC**
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Telephone:  206-621-6566
Email:  ydorjee@badgleymullins.com

CERTIFICATE OF SERVICE - 1