UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAYSAL A JAMA,

                    Plaintiff,

        v.

STATE FARM FIRE AND
CASUALTY COMPANY,

                    Defendant.

CASE NO. C20-652 MJP

ORDER ON PLAINTIFF'S
MOTION FOR CLASS
CERTIFICATION

This matter comes before the Court on Plaintiff's Motion for Class Certification. (Dkt. No. 44.) Having reviewed the Motion, the Opposition (Dkt. No. 53), the Reply (Dkt. No. 58), the Surreply (Dkt. No. 71), Plaintiff's additional briefing on Rule 23(g) (Dkt. No. 102), Defendant's Notices of Supplemental Authority (Dkt. Nos. 57, 108), and all supporting materials, and having held oral argument on the Motion on June 22, 2021, the Court GRANTS in part the Motion.

## BACKGROUND

This case involves Defendant State Farm Fire and Casualty Company's claims settlement process used to determine the actual cash value (ACV) of an insured's total loss vehicle. Plaintiff

1  Faysal Jama attacks State Farm's practice of applying a "typical negotiation discount" and

2  condition deductions to the comparable cars used to determine the ACV of an insured's total loss

3  vehicle. These discounts appear in reports prepared by a third-party Audatex, which are referred

4  to as "Autosource Reports." Plaintiff alleges that valuations based on Autosource Reports with

5  the typical negotiation discount and condition deductions violate Washington's insurance

6  regulations. Plaintiff pursues claims for: (1) breach of contract, (2) insurer bad faith, (3) breach

7  of the duty of good faith and fair dealing, (4) violation of the Washington Consumer Protection

8  Act, and (5) declaratory judgment. (Complaint ¶¶ 6.1-6.29 (Dkt. No. 1-3).)

9  **A.     Regulatory Framework**

10       The parties agree that a "necessary predicate" to Plaintiff's claims is State Farm's alleged

11  violation of WAC 284-30-391 ("Section 391"). (Def. Opp. at 8 (Dkt. No. 53 at 14).) The Court

12  has already analyzed the regulatory framework of Section 391 in ruling on State Farm's Motion

13  to Dismiss. (Order on Motion to Dismiss (Dkt. No. 29).) The Court reviews several pertinent

14  aspects of that analysis to help frame the legal issues presented in the Motion.

15       Section 391 establishes the methods by which an insurer "must adjust and settle vehicle

16  total losses" and the standards of practice for the settlement of total loss vehicle claims. WAC

17  284-30-391. The settlement methodology and standards of practice work in tandem and impose

18  intertwined, but independent requirements on the insurer. Section 391 states that "[u]nless an

19  agreed value is reached, the insurer must adjust and settle vehicle total losses using the methods

20  set forth in subsections (1) through (3) of this section." WAC 284-30-391 (emphasis added). But

21  the insurer need follow just one of these three methods. At issue in this case is Section 391's

22  "cash settlement" methodology. This provision permits the insurer to "settle a total loss claim by

23  offering a cash settlement based on the actual cash value of a comparable motor vehicle, less any

24

applicable deductible provided for in the policy." WAC 284-30-391(2). Section 391(2) includes two key provisions to determine actual cash value of a comparable motor vehicle. First, to determine the actual cash value, "only a vehicle identified as a comparable motor vehicle may be used." WAC 284-30-391(2)(a). Second, the insurer must "determine the actual cash value of the loss vehicle by using any one or more of the following methods": (1) comparable motor vehicle; (2) licensed dealer quotes; (3) advertised data comparison; or (4) computerized sources. WAC 284-30-391(2)(b)(i)-(iv).

Section 391 also "establish[es] standards of practice for the settlement of total loss vehicle claims" which the "insurer must" follow. WAC 284-30-391(4). Relevant here is Section 391(4)(b), which says that the insurer must "[b]ase all offers on itemized and verifiable dollar amounts for vehicles that are currently available, or were available within ninety days of the date of loss, using appropriate deductions or additions for options, mileage or condition when determining comparability."

In ruling on the Motion to Dismiss, the Court concluded that "[t]o give full effect to the language of Section 391(2), the Court finds that the 'actual cash value' determination must comply with the methodologies set forth in Section 391(2)." (MTD Order at 10.) "This determines the 'fair market value' of a comparable vehicle, which is consistent with the general definition of 'actual cash value' in Section 320." (Id.) The Court also held that Section 391(4) provides the exclusive list of deductions that can be taken from the actual cash value determination. (Id. at 12-13.) To comply with Section 391(4), any deduction must also be itemized and verifiable. (Id. at 13-14.) In so holding, the Court defined the terms "itemized" and "verifiable" as follows: "Merriman Webster defines the term 'itemized' as 'to set down in detail

or by particulars; list' and defines 'verifiable' as to be able to 'establish the truth, accuracy or reality of.'" (<u>Id.</u> at 13 (citation and quotation omitted).)

**B.      Facts Relevant to the Named Plaintiff**

The Court reviews the facts related to the settlement of Plaintiff's total loss claim to understand whether he may represent a class of similarly situated individuals.

Plaintiff was an insured of State Farm when State Farm deemed his 2009 Honda Civic Hybrid sedan a total loss in May 2019. (<u>See</u> Declaration of Faysal Jama, ¶ 2 and Ex. A.) To evaluate the amount of the total loss, State Farm obtained an Autosource Report to value Plaintiff's loss vehicle. (<u>Id.</u> Ex. B.) The Autosource Report used four different comparable vehicles, making adjustments to account for differences with the Plaintiff's vehicle, including mileage and options. (<u>Id.</u>) The value of these comparable vehicles was then used to establish the "actual cash value" of Plaintiff's vehicle. (<u>Id.</u>) The value of each comparable vehicle was then reduced another further 9% as a "typical negotiation discount," a deduction buried in the fine print. (<u>Id.</u>) The Autosource Report then took an addition $155 deduction for the apparent atypical condition of Plaintiff's car, though neither Audatex nor State Farm inspected the condition of the comparable vehicles. (<u>Id.</u>; Deposition of Neal Lowell at 148:22-150:6 (Dkt. No. 45).) Through a representative of Plaintiff's counsel's firm, Plaintiff requested to "settle out the claim." (Graff Decl. ¶ 23 & Ex. B (Dkt. No. 54 and 54-2 at 4).) State Farm paid the amount set out in the Autosource Report, but Plaintiff maintains that he continued to dispute the valuation. (<u>See</u> Resp. to RFA Nos. 2-3, 5, 7 (Dkt. No. 55-19).)

**C.      Facts Relevant to Class Certification**

Plaintiff asserts that State Farm follows a uniform claims settlement practice through which it underpays its insureds' total loss claims by using an ACV determined in Autosource

Reports that includes a typical negotiation discount and a condition deduction applied to the comparable vehicles. The evidence bears this out. The typical claims handling process starts with a car inspection performed by a State Farm "estimator" or repair facility representative which leads to the creation of a Vehicle Inspection Report. (Declaration of Douglas Graff ¶¶ 11-12 (Dkt. No. 54).) This "triggers the valuation process" which includes obtaining an "Autosource Report" created by a third-party vendor called Audatex/Solara. (Id. ¶¶ 11-13.) From March 25, 2014 to the present, State Farm has used Autosource Reports to provide computerized ACVs on total loss claims. (Deposition of Douglas Graff at 29:7-20 (Dkt. No. 45).) Autosource Reports are used "99-plus percent of the time" when there is a total loss claim in Washington. (Id. at 32:16-21.) And absent rare circumstances (when no comparable vehicles are found or when the comparable vehicle either has a "sold" price or sold by a "no-haggle" dealer), the Autosource Report will apply a typical negotiation discount to the advertised price of the comparable vehicles. (Id. at 45:8-46:3; Declaration of Neal Lowell ¶ 15 (Dkt. No. 56).)

Once the claims handler has reviewed and "verified" the Autosource Report as to the condition, equipment, mileage, and options, they will reach out to the customer to discuss the valuation. (Graff Decl. ¶ 17.) Claims handlers do not provide insureds the Autosource Report as a matter of course—only if requested. (Id. ¶ 20.) If the insured contests the valuation, then the claims adjuster may change the valuation based on objective information from the insured and they can request an updated Autosource Report reflecting that new data. (Graff Decl. ¶¶ 20-22.) The claims file should note whether the claims adjuster specifically discussed the negotiation discount and/or if the insured was sent the Autosource Report. (Graff Dep. 163:24-164:8; Deposition of Ellie Gray at 45:15-46:24, 47:14-50:2, 54:22-55:22 (Dkt. No. 75-14).) If the insured objects to the negotiation discount, State Farm will not "back out" the discount but will

instead consider a two-dealer quote report. (Graff Dep. at 168:1-169:20.) Using anything other than the Autosource Report for the valuation requires management approval and documentation in both the claims file and State Farm's computer-searchable database. (Graff Dep. at 171:3-172:20, 202:1-13, 235:7-235:14, 245:3-247:4.) If the insured and State Farm cannot agree, then the next step is appraisal. (Graff Dep. at 172:21-175:6; 236:13-237:8.)

Plaintiff points to evidence that the process for applying a condition deduction also follows a common pattern. Plaintiff notes that Audatex's system always assumes that the comparable cars are of "typical" condition without any inspection of those vehicles. (See Lowell Dep. at 151:12-152:2.) Audatex's assumed "typical" condition is based on historical inspections performed by insurance adjusters and appraisers. (Id. at 155:25-156:19, 170:15-24.) Audatex does not require these "inspectors" be licensed or certified. (Id.) According to Audatex, its historical data is not limited to the condition of comparable vehicles sold within ninety (90) days, as required by Section 391. (Id. at 160:4-18.) Audatex then breaks the various conditions into 12 categories and assigns a percentage of the vehicle's value to each category. (Id. at 162:16-164:11.) The percentages have not been changed in the last 10 years and the 30(b)(6) witness for Audatex did not know how they were calculated. (Id.)

State Farm focuses much of its briefing on its contention that insureds often reach agreement on the value of the total loss claim, which is relevant to State Farm's theory of compliance with Section 391. According to State Farm, when an insured agrees to the value State Farm proposes, "the agreement is documented in the claim file." (Graff Decl. ¶ 23.) State Farm also sends a letter to the insured explaining the valuation and the total-loss settlement process, and it includes a release of interest/power of attorney. (Id. ¶ 24.) The sole example State Farm points to are call notes in Plaintiff's claim file, which state:

"RCF [Received Call From] Anna from the Law offices of Daniel Whitmore the NI's [Named Insured's] attorney's office stating the NI [Named Insured] wants to settle out the claim … Value Accepted (Y/N): Y."

(Graff Decl. ¶ 23.) The parties dispute whether this shows Plaintiff agreed to the negotiation discount, and Plaintiff argues that he merely sought payment without waiving his objection to the negotiation discount. State Farm has not provided evidence from the claim files of any insureds in the proposed class that the insured specifically and expressly agreed to the use of the typical negotiation discount or the condition deduction being applied to reach the ACV.

Instead, State Farm relies heavily on a survey that its expert, John Lynch, Jr., conducted of a small sample of insureds and argues that class members frequently agree to the ACVs presented by State Farm. Lynch designed a survey of putative class members based on Plaintiff's original proposed class definition and the proposed class definition in the related matter of Ngethpharat v. State Farm, C20-454 MJP. Of the list of 60,689 claims he found only 50,970 of the insureds had email addresses. (Expert Report of John Lynch, Jr. ¶ 14 (Dkt. No. 55-2).) After some testing, he ultimately sent a survey to 4,000 randomly-sampled individuals and only 10.7% completed (427) the survey. (Id. ¶ 22 and Ex. 5 to Lynch Report.) Through what looked like a communication directly from State Farm, Lynch's survey asked the following questions:

1. Did you call your State Farm insurance agent after your total loss accident?

2. Did you speak with a State Farm claim specialist after your total loss accident?

3. Were you satisfied or dissatisfied with the speed of the final settlement you received from State Farm?

4. Were you satisfied or dissatisfied with the amount of the final settlement you received from State Farm?

5. Did you tell State Farm that you disagreed with the dollar value of the settlement for your totaled vehicle?

6. When you made your total loss claim, did you do your own research to figure out the fair market value of your vehicle?

7. What sources did you consult to figure out the fair market value of your vehicle just prior to your accident? Select all that apply

8. When you replaced your totaled vehicle, did you negotiate the price of the replacement vehicle you purchased or leased?

(Dkt. No. 85-2 at 9-10.) The results showed that 81.7% of the people polled stated they were satisfied with the amount of the final settlement, but 20.6% stated they disagreed with the dollar value of the settlement. (Lynch Report ¶ 24.) Absent from the survey are any questions about whether the recipient agreed with the value State Farm came up with for the loss vehicle, whether the person knew about the typical negotiation discount, whether the insured agreed with the typical negotiation discount, or whether the typical negotiation discount was applied to the insured's claim. Lynch initially did not determine what portion of the respondents are current or former insureds. His supplemental declaration states that the reporting rate was slightly higher for current insureds, but that the no differences in "satisfaction or in any other survey measure" as between the two population. (Declaration of John Lynch in Opposition to Plaintiffs' Motion to Exclude ¶ 4 (Dkt. No. 86-4).)

**D.    Proposed Class Definitions**

In the initial Motion, Plaintiff sought to certify the following class:

All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system, and (3) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

(Mot. at 2 (Dkt. No. 44).) In response to criticism from State Farm, Plaintiff's Reply proposes two classes as follows:

**Typical Negotiation Deduction Class:**

All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system which took a deduction/adjustment for "typical negotiation," and (3) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

**Condition Deduction Class**:

All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system which took deductions for the condition of the loss vehicle, and (3) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

(Reply at App'x 1 (Dkt. No. 58-1 at 2).) As clarified during oral argument, the two classes largely overlap. (See Presentation from Oral Argument at 16 (Dkt. No. 106).) Nearly all of the insureds in the class who had a condition deduction taken, also had the typical negotiation discount applied, too. Roughly 8% likely had only the condition deduction applied.

## ANALYSIS

**A.  Class Certification Standard**

Courts must undertake a "rigorous analysis" of all the Rule 23 factors to determine whether to certify a class. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011). The plaintiff must first meet all four requirements in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. See Leyva v. Medline Indus., 716 F.3d 510, 512 (9th Cir. 2013); Fed. R. Civ. P. 23(a). The plaintiff must also satisfy one of the Rule 23(b) factors. Here Plaintiff seeks certification under the "predominance" standard of Rule 23(b)(3). "To obtain certification

of a class action for money damages under Rule 23(b)(3)," a putative class must also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members." <u>Amgen Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 460.

Plaintiff must demonstrate predominance and superiority under Rule 23(b)(3) by a preponderance of the evidence fits Rule 23(b)(3). <u>See</u> <u>Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC</u>, 993 F.3d 774, 784 (9th Cir. 2021). "Establishing predominance, therefore, goes beyond determining whether the evidence would be admissible in an individual action" and "[i]nstead, a 'rigorous analysis' of predominance requires 'judging the persuasiveness of the evidence presented' for and against certification.'" <u>Id.</u> at 785-86 (quoting <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 982 (9th Cir. 2011)). And in ruling on a motion for class certification "[c]ourts must resolve all factual and legal disputes relevant to class certification, even if doing so overlaps with the merits." <u>Id.</u> at 784 (citing <u>Wal-Mart</u>, 564 U.S. at 351).

**B.    Rule 23(a)(1): Numerosity**

Numerosity exists when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." <u>Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n</u>, 446 U.S. 318, 330 (1980). Here, State Farm admitted in its notice of removal that there are "8,004 total-loss claims and insureds that fall within Plaintiff's class definition." (Dkt. No. 1-4, ¶ 9.) This is sufficient to demonstrate numerosity and State Farm makes no challenge in opposition.

**C.      Rule 23(a)(2): Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." <u>Wal-Mart</u>, 564 U.S. at 349–50 (citation and quotation omitted). To satisfy commonality, the claims must depend on a common contention "that is capable of classwide resolution." <u>Id.</u> at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." <u>Id.</u> (quotation and citation omitted). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." <u>Id.</u> (quotation and citation omitted).

**1.      Plaintiff's proof of commonality**

<u>Typical Negotiation Discount</u>

The primary common contention that can be resolved on a classwide basis is whether State Farm is permitted to settle total loss claims with a typical negotiation discount. Resolution of this question will be common to the class of persons paid a value determined in an Autosource Report with the negotiation discount applied. If the Court finds the negotiation discount either permissible or not, then all of the class members' claims will be resolved on a classwide basis. This is also true of Plaintiff's claims premised on the theory that the negotiation discount is not "verifiable" as required by Section 391(4)(b). Based on the Court's review of the Autosource Report examples filed to date, it appears that the disclosures and descriptions of the typical negotiation is uniform, and its verifiability (or lack thereof) can be resolved on a classwide basis.

The only problem with regard to the above-identified commonality is the proposed class definition, which includes insureds who were not necessarily paid the amount determined in an

Autosource Report with the typical negotiation discount applied. Such insureds would not have injuries directly traceable to the negotiation discount and resolution of the legality of the deduction would not necessarily resolve their claims. But this is not fatal to Plaintiff's request for class certification. "[W]hen a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal." 3 Newberg on Class Actions § 7:27 (5th ed.); see Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 594 (E.D. Cal. 2008), adhered to, 287 F.R.D. 615 (E.D. Cal. 2012) ("[C]ourts retain the discretion to alter an inadequate class definition."). Rather than deny class certification, the Court finds it appropriate to revise the class definition to include only those paid the value determined in an Autosource Report with the negotiation discount applied. By so narrowing the class, the Court ensures that the legality of the negotiation discount can be resolved on a classwide basis. The Court therefore revises the class definition as follows:

**Typical Negotiation Class**

All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system which took a deduction/adjustment for "typical negotiation," (3) where such claims were settled and paid using the amount determined in the Autosource valuation which took a deduction/adjustment for "typical negotiation"; and (4) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

Condition Deduction

Plaintiff also identifies common contentions capable of classwide resolution as to his claim that the condition deduction violates Section 391. Plaintiff points to testimony from Audatex's 30(b)(6) witness that condition deductions are unverifiable and rely on data that is temporally and geographically noncompliant with Section 391. The witness confirmed that

Audatex does not inspect the condition of comparable cars used on the Autosource Report. (Lowell Dep. at 148:22-152:18.) Instead, Audatex assumes the comparable vehicles are in typical condition. (Id.) Audatex then calculates the condition deduction on historical data (not the specifically-identified comparable cars) that is updated "typically quarterly" and gathered within the state which is not necessarily current or from within 150 miles of the loss vehicle. (Id. at 153:11-154:13, 160:4-18.) Plaintiff argues that this deduction methodology applies to every condition deduction and violates Section 391 by using unverifiable data that is not within 90 days and 150 miles of the loss vehicle.

The Court agrees with Plaintiff that the permissibility of these condition deductions can be resolved on a classwide basis using common evidence. It appears that Plaintiff can establish that the condition deduction methodology violates Section 391 using evidence common to the class and that resolution of the claim will apply classwide. State Farm argues that the condition deduction is not capable of classwide proof, relying on the decision in Lundquist v. First Nat'l Ins. Co. of Am., No. C18-5301RJB, 2020 WL 6158984, at *2 (W.D. Wash. Oct. 21, 2020). In Lundquist, the plaintiffs set out "to prove that the WACs were violated by using comparable vehicles in the adjustment of a claim that was reduced by a condition adjustment." 2020 WL 6158984, at *1. To do so, the plaintiffs had to "show that the comparable vehicles used were not comparable vehicles at all because any condition adjustment was (1) not itemized and (2) inappropriate in dollar amount." Id. While the Court found the failure to itemize was capable of classwide proof, it found a lack of commonality because "Plaintiffs would have to prove that each class member's condition adjustment was for an inappropriate dollar amount, and Defendants, in their responsive case, would have the right to present evidence that each individual class member received an appropriate determination of actual cash value." Id. at *2.

But in this case, there is no need to make any individual determination of the appropriateness the dollar amount of each condition deduction. Instead, Plaintiff claims that the common methodology used to determine any condition deduction violates Section 391 and the legality of any condition deduction can be resolved uniformly as to the whole class. This does not require an individual valuation determination.

But as with Plaintiff's proposed definition of the typical negotiation deduction class, the proposed definition is overbroad and does not limit itself to those whose claims were settled and paid using a valuation that included a condition deduction. Rather than deny the motion, the Court revises the definition to preserve what appears an otherwise appropriate class definition. See Campbell, 253 F.R.D. at 594. The Court thus revises the class definition as follows:

**Condition Deduction Class**:

All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system which took deductions for the condition of the loss vehicle, (3) where such claims were settled and paid using the amount determined in the Autosource valuation which took deductions for the condition of the loss vehicle; and (4) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

**2.      State Farm's arguments against commonality**

State Farm claims that there are three flaws as to commonality, which the Court addresses below. State Farm also attacks the issue of damages in the context of commonality and predominance under Rule 23(b)(3). The Court separately addresses those concerns in the context of its predominance analysis in Section F(2).

### a. Agreed Value

State Farm argues that Plaintiff cannot prove liability with common evidence because each claim will need to be examined to determine whether the insured "agreed" to the value. (Def. Opp. at 8-10 (Dkt. No. 53).) State Farm argues Section 391 "expressly allows an insurer and insured to reach an 'agreed value' based on any methodology" and that this necessitates mini-trials on whether each insured's reached an agreement as to value. (Id. at 8-10.)

To understand this argument, the Court reviews the relevant portion of Section 391, which states:

> Unless an agreed value is reached, the insurer must adjust and settle vehicle total losses using the methods set forth in subsections (1) through (3) of this section. Subsections (4) through (6) of this section establish standards of practice for the settlement of total loss vehicle claims. If an agreed value or methodology is reached between the claimant and the insurer using an evaluation that varies from the methods described in subsections (1) through (3) of this section, the agreement must be documented in the claim file. The insurer must take reasonable steps to ensure that the agreed value is accurate and representative of the actual cash value of a comparable motor vehicle in the principally garaged area.

WAC 284-30-391. The key question is what the nature of the agreement as to the "value or methodology" must be to satisfy this exception to following the settlement methodologies listed in Section 391(1)-(3). The third sentence explains that the "agreed value or methodology" must be "reached between the claimant and the insurer using an evaluation that varies from the methods described in subsections (1) through (3)." Reading this in the context of the regulations and for plain meaning, the Court construes this to require that the agreement expressly acknowledge that the value arrived at or methodology used otherwise does not comply with the settlement methodologies of Section 391(1)-(3). In the context of this case, the relevant question is whether the insured expressly agreed to the typical negotiation discount and/or condition deduction applied to the comparable cars used to determine the ACV in the Autosource Report. This agreement must also be documented in the claim file. WAC 284-30-391. To satisfy this safe

harbor, State Farm bears the burden of showing that the claim file contains an express agreement by the insured to the Autosource Report's use of a typical negotiation discount and/or condition deduction. And because this safe harbor acts as an affirmative defense, State Farm bears the burden of showing that there is evidence of consent in the class and that this issue could impact commonality. See True Health Chiropractic, Inc. v. McKesson Corp., 896 F.3d 923, 932 (9th Cir. 2018) (noting that the defendant bears the burden of providing evidence of predominance-defeating consent to a TCPA claim).

State Farm has failed to convince the Court that the "agreed value" safe harbor threatens commonality. State Farm's primary witness states in his declaration that any agreed value must be documented in the claim file (Graff Decl. ¶¶ 23-24), but he testified that the claim file would only document an agreement to accept payment, not an agreement to use a non-compliant valuation methodology (Graff Dep. 81, 84-85). This cuts against State Farm's ability to satisfy the safe harbor, which requires the claim file to show an express agreement as to the use the typical negotiation discount and/or condition deduction. State Farm also fails to provide any evidence of any class member who has agreed to either deduction. This is fatal to State Farm's argument, which requires some evidence of consent to defeat class certification. See True Health, 896 F.3d at 932. The only evidence State Farm points to are the "File History Notes" in Plaintiff's claim file, which say:

> "RCF [Received Call From] Anna from the Law offices of Daniel Whitmore the NI's [Named Insured's] attorney's office stating the NI [Named Insured] wants to settle out the claim … Value Accepted (Y/N):Y."

(Graff Decl. ¶ 23.) But these call notes just show that Plaintiff wanted to be paid on the claim, not that he agreed to the use of the typical negotiation or condition deduction. And even if State Farm had produced some evidence sufficient to satisfy the safe harbor, it would not appear to

require an in-depth analysis because State Farm is required to document the express agreement in each claim file. There would be no need for an extensive inquiry as to each claim.

State Farm also relies on Lynch's survey to argue that there is proof that State Farm reached an agreed value with most members of the proposed class. This argument is flawed because the survey did not ask whether the insured: (a) had a typical negotiation discount or condition deduction applied to the valuation, (b) knew that a typical negotiation discount or condition deduction had been applied, or (c) agreed to the use of the typical negotiation discount or condition deduction to reach the ACV of their total loss car. Instead, the survey just asked whether the insured was satisfied with the final settlement or whether the insured "disagreed" with the "dollar value" of the settlement. (Dkt. No. 55-2 at 9-10.) The survey does not demonstrate proof of consent that might threaten commonality. See True Health, 896 F.3d at 932.

### b.      ACV Determination

State Farm also argues that commonality cannot be shown because the ACV for each class member's vehicle will need to be individually determined. The Court is unconvinced.

First, State Farm ignores the fact that Plaintiff does not quibble with the ACV determination in the Autosource Reports except as to the amount deducted for the negotiation discount and/or condition deduction and the related sales tax. In other words, the Autosource-determined ACV is not at issue except for the amount of the typical negotiation discount and/or condition deductions. To combat this shortcoming, State Farm again relies on Lundquist. But Lundquist remains factually distinguishable. The claims there required a determination of whether the correct comparable vehicles and condition deductions were used, which required plaintiffs to "prove that the dollar amount of a 'comparable vehicle' was inappropriate." 2020

WL 6158984, at *2. Here, Plaintiff challenges only the legality of the deduction of the typical

negotiation discount and/or condition deductions, not the appropriateness of the dollar amount of

the comparable vehicles. The Court agrees with Plaintiff that the analysis of the legality of these

deductions does not require a claim-by-claim review. The Court rejects State Farm's argument,

which assumes too much from what Plaintiff has set out to prove.

### c.    Weighting

State Farm argues that even if Section 391 does not allow the negotiation deduction,

Section 392 does because it allows insurers to use weighting to adjust value of comparable

vehicles including for negotiation discounts. This argument lacks merit. The first problem is that

State Farm asks the Court to label the negotiation discount a form of "weighting" despite the fact

that it is used as a deduction to the ACV of comparable cars. As State Farm's own expert,

Laurentius Marais, opines, "the 'adjustments' referred to in WAC Sec. 284-30-391 intrinsically

involve addition and subtraction . . ., while the "weighting" referred to in WAC Sec. 284-30-392

intrinsically involves multiplication." (Expert Report of M. Laurentius Marais ¶ 13 (Dkt. No. 55-

1).) Here, the typical negotiation discount is simply a deduction applied to the advertised price of

each comparable car and does not involve weighting of the comparable cars. While the precise

amount of the negotiation discount deducted from each comparable car may be reached through

multiplication, the discount itself functions purely as a deduction or subtraction just as the other

adjustments do in Section 391. The Court is not convinced that the typical negotiation discount is

a form of weighting of the "identified vehicles to arrive at an average" value of the comparable

vehicles. The second problem is that State Farm essentially asks the Court to read Section 392's

mention of "weighting" as a means by which to expand the limited settlement methodologies for

additions and deductions listed in Section 391(1)-(3). But by its own title, Section 392 is limited

to "Information that must be included in the insurer's total loss vehicle valuation report." Section 392 does not expand the kinds of deductions and additions that can be taken under Section 391(1)-(3). The Court rejects this argument in full.

**D.    Rule 23(a)(3): Typicality**

To demonstrate typicality, Plaintiff must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Id. (internal citation and quotation marks omitted). "The requirement is permissive, such that "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014)). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon, 976 F.2d at 508.

In light of the Court's revised class definition, the Court finds that Plaintiff's claimed injuries are typical of both classes, as he was paid a value based on an Autosource Report that applied the negotiation discount and a condition deduction. The Court is satisfied with Plaintiff's typicality as to both classes.

# E. Rule 23(a)(4): Adequacy of Representation

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(4)), overruled on other grounds by Wal-Mart, 564 U.S. 338. Adequacy of representation requires that "[f]irst, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). And the Court must also assess the following requirements of Rule 23(g) to determine the adequacy of class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action;

> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

> (iii) counsel's knowledge of the applicable law; and

> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). And class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

The Court finds that Plaintiff is an adequate class representative committed to representing the classes's interests and able to prosecute the action through counsel. The Court is also satisfied that Mark Trivett of Badgley Mullins Turner, PLLC and Daniel Whitmore of the Law Office of Daniel R. Whitmore, PS are adequate class counsel who will fairly and adequately represent the interest of the class. Both Trivett and Whitmore explain the work they have done to

1   identify or investigate potential claims on Plaintiff's behalf and their experience in handling class

2   actions and other complex cases involving similar kinds of claims. (Declaration of Mark Trivett

3   (Dkt. No. 38); Brief re: Rule 23(g) and supporting Declarations of Trivett and Daniel Whitmore

4   (Dkt. Nos. 102-104)); Fed. R. Civ. P. 23(g)(1)(A)(i) and (ii). Trivett and Whitmore have

5   demonstrated throughout the course of this case their knowledge of the applicable law and the

6   subject matter of this case. See Fed. R. Civ. P. 23(g)(1)(A)(iii). And they both aver that their two

7   firms have the resources available to commit to representing the class, and have already made

8   expenditures in this regard. See Fed. R. Civ. P. 23(g)(1)(A)(iv); (Dkt. Nos. 102-104). The Court

9   therefore finds both Trivett and Whitmore and their respective law firms to be adequate class

10  counsel.

11  **F.      Rule 23(b)(3): Predominance**

12      Plaintiff asks the Court to certify the class under the predominance and superiority

13  requirements of Rule 23(b)(3). The Court assesses both issues, along with the question of

14  damages.

15      **1.      Common questions of law and fact**

16      The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

17  warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623

18  (1997). "This calls upon courts to give careful scrutiny to the relation between common and

19  individual questions in a case." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016).

20  "An individual question is one where members of a proposed class will need to present evidence

21  that varies from member to member, while a common question is one where the same evidence

22  will suffice for each member to make a prima facie showing [or] the issue is susceptible to

23  generalized, class-wide proof." Id. (citation and quotation omitted). "The Rule 23(b)(3)

24

predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." <u>Torres v. Mercer Canyons Inc.</u>, 835 F.3d 1125, 1134 (9th Cir. 2016).

Plaintiff has demonstrated the predominance of classwide issues over individual ones. The primary common questions are whether the typical negotiation deduction and/or condition deduction included in the Autosource Report are legally permissible. As the Court has already explained in its discussion of commonality, resolution of these questions can be made on a classwide basis using common evidence because they involve legal determinations whose impact will be felt equally by members of the classes, all of whom received total loss valuations that included a negotiation deduction and/or condition deduction. Plaintiff has demonstrated that each class member's claim can be resolved using classwide proof, which suffices to show predominance.

State Farm makes five arguments against predominance, none of which has merit. The Court has already considered the first three arguments—whether individual issues persist because of the "agreed value" safe harbor, whether the Court must determine the ACV of class member's vehicle, and the permissibility of the negotiation discount as a form of weighting. These same arguments fail in the context of predominance, as none of them requires individual determinations to predominate over those common to the class. The Court also rejects State Farm's argument that the question of whether individual class members suffered an injury will predominate. (Opp. at 16-17.) As refined by Plaintiff and the Court, the class definitions include only those who received payment based on an Autosource Report with the negotiation discount and/or condition deduction. If Plaintiff succeeds in proving liability, then each class member will have suffered the same injury compensable by refunding the improperly-applied negotiation

discount and/or condition deduction. And the condition deduction class excludes those who received only an upward condition adjustment who would not otherwise have an injury. The Court finds no concerns as to the class members' individual injury and standing. See TransUnion LLC v. Ramirez, ___ U.S. ___, No. 20-297, 2021 WL 2599472, at * 10 (U.S. June 25, 2021) (noting that "[e]very class member must have Article III standing in order to recover individual damages"). Nor has State Farm identified any evidence, let alone the claimed "significant evidence," that the class "includes a large percentage of uninjured class members who . . . reached an 'agreed value.'" (Opp. at 17 (Dkt. No. 53).) This theoretical argument does not defeat predominance.

Lastly, the Court rejects State Farm's argument that the issue of causation under the CPA is an individual issue that will predominate, making class certification improper. State Farm argues "the only way to determine proximate causation is through an assessment of each class member's claim that State Farm's purported failure to explain the typical negotiation adjustment caused his or her damages." (Opp. at 18 (Dkt. No. 53).) State Farm is correct that causation is an element of Plaintiff's CPA claim. See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 793 (1986) ("A causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff.") But here, Plaintiff challenges the application of the typical negotiation discount and/or condition deduction as per se CPA violations. This stands in contrast to Kelley v. Microsoft Corp., 2011 WL 13353905 (W.D. Wash. May 24, 2011), on which State Farm relies, where the question of causation depended on the "motivation of each consumer." Id. at *3. Here, the insured's motivation is irrelevant given the per se nature of the claimed violation. What matters is whether the negotiation discount and/or condition deduction are permitted.

### 2. Damages and the Damages Model

State Farm argues that Plaintiff has not shown that there is common proof of damages or a viable damages model consistent with his theory of liability. The Court disagrees.

Under Rule 23(b), plaintiff must show that "damages are capable of measurement on a classwide basis" and that the proposed damages model is consistent with the theory of liability. See Comcast Corp. v. Behrend, 569 U.S. 27, 34 (2013). Plaintiff pursues breach of contract, CPA, and breach of the duty of good faith claims. The Court reviews the recoverable damages under each claim.

As to their breach of contract claim, Plaintiff is entitled to the benefit of the bargain: "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give that party the benefit of the bargain by awarding him or her a sum of money that will, to the extent possible, put the injured party in as good a position as that party would have been in had the contract been performed." Ford v. Trendwest Resorts, Inc., 146 Wn.2d 146, 155 (2002) (citation and quotation omitted). This includes the benefit of having the insurer comply with insurance regulations, because when applicable regulations provide a specific procedure for settling claims they become "a part of and should be read into the insurance policy." See Touchette v. NW Mut. Ins. Co., 80 Wn.2d 327, 332 (1972).

As to the CPA, a plaintiff may bring a private CPA action against their insurers for breach of the duty of good faith or for violations of Washington insurance regulations. Peoples v. United Servs. Auto. Ass'n, 194 Wn.2d 771, 778 (2019). The failure by an insurer to follow WAC requirements in settling an insurance claim is a per se CPA violation—meaning that the practice is unfair and deceptive and occurs in the conduct of trade or commerce. Van Noy v. State Farm Mut. Auto. Ins. Co., 98 Wn. App. 487, 495-96 (1999) aff'd, 142 Wn.2d 784 (2001). And "the

deprivation of contracted-for insurance benefits is an injury to 'business or property' regardless of the type of benefits secured by the policy." Peoples, 194 Wn.2d at 779 (finding that wrongful denial of PIP benefits are compensable under the CPA). Under the CPA, damages are properly calculated by determining the amount of the wrongly withheld contracted-for insurance benefits. See id.

And as to the bad faith claim, the plaintiff "must prove actual harm, and its damages are limited to the amounts it has incurred as a result of the bad faith . . . as well as general tort damages." Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wn.2d 122, 133 (2008); see Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269, 285 (1998).

Plaintiff proposes a manageable and reasonable damages model that matches his theory of liability as to the refined classes of individuals who were paid an amount based on a negotiation discount and/or a condition deduction. If Plaintiff is correct that these deductions are impermissible, then the proper measure of damages is the refund of the negotiation discount and/or condition deduction and related sales tax. This is the benefit of the bargain to which the insureds were entitled given the method by which State Farm chose to settle the claims and its duty of good faith. Plaintiff has identified common evidence in State Farm's and Audatex's possession that can be used to determine the negotiation discount and/or condition deduction for each class member. (See Torelli Report ¶¶ 4, 15-23, 27-32 (Dkt. No. 41).) The process of performing these calculations appears one capable of common treatment and resolution using a common methodology.

State Farm makes several unsuccessful arguments as to why damages do not meet the commonality and predominance requirements. First, State Farm argues that an "in-depth analysis" of exactly what each class member was "actually underpaid" is required. (Dkt. No. 53

at 19.) This, State Farm argues, would require an analysis of each class member's vehicle to determine what the difference between the ACV and what State Farm paid. This argument fails to grapple with the reality that Plaintiff does not quibble over the ACV as determined by the Autosource Report—just the negotiation discount and/or condition deduction and the related sales tax.

Second, State Farm argues that representative evidence cannot be used to determine classwide damages. (Opp. at 21-23.) The Court need not reach this issue because Plaintiff has shown how damages can be properly calculated on an individual claim basis rather than on an aggregate basis. (See Torelli Report at ¶¶ 4, 15-23, 27-32.) But given the Parties' discussion of this potential methodology, the Court briefly reviews this issue. As Torelli opines, a sample of claims can be used to determine classwide damages. (See id. ¶ 24.) He adds further detail to this proposed methodology with the Reply brief, explaining how he can "generate a relatively accurate individual damages figure for each class member to be used in a distribution phase" using Audatex's price bands and data from State Farm. (Torelli Supplemental Report ¶ 21 (Dkt. No. 60).) State Farm levies two unsuccessful attacks to this approach. First, State Farm argues that aggregate damages would be inappropriate if the methodology allows class members who did not actually receive a negotiation discount to recover. But by limiting the class to those who received a settlement with the negotiation discount applied, the Court finds no potential problem of providing recovery to those who suffer no damages. Second, State Farm invokes the recent Olean decision to argue that use of statistical sampling and aggregate damages will violate the Rules Enabling Act by expanding its liability to individuals who have not been harmed. But Olean was concerned with the use of representative sampling to prove liability, not damages. The Court made that distinction quite clear:

Moreover, even if class members suffered individualized damages that diverged from the average overcharge calculated by Plaintiffs' expert, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." Leyva, 716 F.3d at 514. Indeed, we have consistently distinguished the existence of injury from the calculation of damages. See Vaquero, 824 F.3d at 1155; Senne, 934 F.3d at 943. Consequently, individualized damages calculations do not, alone, defeat predominance—although, as we discuss below, the presence of class members who suffered no injury at all may defeat predominance.

Olean, 993 F.3d at 790. Here, sampling is proposed only to calculate damages, not to prove

liability. And State Farm will still be permitted to challenge individual claims with any available

affirmative defense, such as the "agreed value" safe harbor State Farm has identified. The Court

does not find any issue with the potential use of sampling in this case.

### 3. Class Treatment is Superior and Manageable

"In determining superiority, courts must consider the four factors of Rule 23(b)(3)."

Zinser v. Accufix Rsch. Inst., Inc., 253 F.3d 1180, 1190 (9th Cir.), as amended on denial of

reh'g, 273 F.3d 1266 (9th Cir. 2001). The four factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiff has shown sufficient superiority here. First, this case involves relatively small

deductions to total loss settlements on damaged cars where the likelihood of recovery is likely

outweighed by the costs of individual litigation. As the Ninth Circuit has explained, "[w]here

damages suffered by each putative class member are not large, this factor weighs in favor of

certifying a class action." Zinser, 253 F.3d at 1190; see Fed. R. Civ. P. 23(b)(3)(A). Second,

neither party has identified any other cases (other than <u>Ngethpharat</u>) involving these kinds of claims against State Farm. <u>See</u> Fed. R. Civ. P. 23(b)(3)(B). Third, there is good reason to focus the claims in this forum because it applies Washington law to Washington residents who have the same policies from State Farm and who encountered this same common practice of applying the negotiation discount. <u>See</u> Fed. R. Civ. P. 23(b)(3)(C). Fourth, notwithstanding State Farm's arguments discussed below, there are no obvious difficulties in managing this on a class basis. See Fed. R. Civ. P. 23(b)(3)(D).

State Farm argues that this case is not manageable because it will require determining whether anyone in the class submitted evidence supporting a different valuation and was paid on that amount. State Farm argues this will require great labor to determine who is in the class and is not "administratively feasible." (Dkt. No. 53 at 29.) But Plaintiff has provided sufficient evidence that this determination is relatively straightforward and is administratively manageable based on the claim files and data available for review. State Farm also argues that appraisal is a far superior process to determining ACV. But this is a red herring. Plaintiff does not dispute the ACV determined by State Farm other than as to the negotiation discount. Thus, the appraisal process would not necessarily resolve the dispute. And State Farm has not shown that the use of an appraisal for each class member would be superior, particularly where the costs would likely eclipse the modest amount at issue for each insured's claim.

## G.     Surreply

State Farm asks the Court to strike: (1) portions of Plaintiff's Reply (Dkt. No. 58), (2) Torelli's Supplemental Expert Report and Declaration filed with the Reply, including attachments 1 through 4 (Dkt. Nos. 59, 60); (3) the Supplemental Declaration of Darrell M. Harber, including attachments A through E (Dkt. No. 61); and (4) the Reply brief's inclusion of

two revised proposed class definitions. The Court GRANTS in part and DENIES in part the request.

First, State Farm asks the Court to strike the portions of Plaintiff's Reply and Torelli's supplemental report that contain new arguments and evidence about a 150-claim file sample that were raised for the first time in reply. The Court agrees that these arguments and evidence were improperly raised for the first time in reply. See Docusign, Inc. v. Sertifi, Inc., 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006). It is true the Court ordered the production of the 150-claim file sample after Plaintiff moved for class certification. (Order on Motion to Compel (Dkt. No. 76).) But Plaintiff did not ask for an extension of the class certification deadline or for leave to amend their Motion once they received the Order or the sample. The Court thus STRIKES the argument based on the sample, and Torelli's materials submitted with the reply. (Dkt. No. 58, 59, 60.) The Court does not, however, find it proper to strike Torelli's further statements about calculating classwide damages using a potential, future sample of class claims. These statements merely expand on his initial report to respond to State Farm's opposition briefing and is not improper.

Second, State Farm asks the Court to strike Darrell Harber's supplemental declaration and exhibits and Plaintiffs' reliance on it in the Reply. The Court has not considered these arguments and evidence and DENIES the request as MOOT.

Third, State Farm also asks the Court to strike Harber's and Torelli's declarations/reports as improper supplemental reports filed after the expert deadline. Given the Court's ruling above, the Court DENIES this request as MOOT. And the Court DENIES as MOOT the request to strike Harber's declaration and Torelli's supplemental reports as to the 150-claim sample, and DENIES the request to Strike Torelli's supplemental report as to classwide damages based on a sampling methodology.

Lastly, State Farm asks the Court to strike the new class definitions submitted with the Reply. The Court disagrees. Plaintiff made these proposed revisions to respond to various critiques in State Farm's opposition. Given that the Court enjoys wide discretion in defining the class, the Court found these proposals to be permissible and helpful. State Farm was also given an opportunity to consider the Court's proposed class definitions and present its views during oral argument. The Court DENIES the request to strike the class definitions.

## CONCLUSION

Plaintiff has provided sufficient evidence to establish by a preponderance that class certification is appropriate and proper under Rule 23(a) and Rule 23(b)(3). The Court certifies the following classes:

**<u>Typical Negotiation Class</u>**

All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system which took a deduction/adjustment for "typical negotiation," (3) where such claims were settled and paid using the amount determined in the Autosource valuation which took a deduction/adjustment for "typical negotiation"; and (4) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

**<u>Condition Deduction Class</u>**:

All persons and entities within the State of Washington that have made first-party property damage claims under contracts of automobile insurance with State Farm that provided for payment of the actual cash value of the policyholder's vehicle (less any applicable deductible) in the event of total loss, and (1) where policyholders experienced a total loss of their insured vehicle covered under such policy, (2) where such claims for total loss were evaluated by State Farm using the Autosource valuation system which took deductions for the condition of the loss vehicle, (3) where such claims were settled and paid using the amount determined in the Autosource valuation which took deductions for the condition of the loss vehicle; and (4) where such claims were paid by State Farm to the policyholder or a lienholder without the parties agreeing to use, and using, an alternative appraisal process described in the policyholder's policy.

The Court also appoints Faysal Jama as class representative and Mark Trivett of Badgley Mullins Turner, PLLC and Daniel Whitmore of the Law Office of Daniel R. Whitmore, PS as class counsel.

The Court also GRANTS in part and DENIES in part State Farm's surreply/motion to strike. The Court STRIKES in part the supplemental report of Torelli and the Reply's citation to it concerning the 150-claim sample. The Court does not strike the additional information Torelli provides about calculating classwide damages using a future sample. The Court DENIES as MOOT State Farm's request to strike the supplemental Harber declaration and the Reply's citation to it. The Court DENIES as MOOT the request to strike Harber's declaration and Torelli's supplemental reports as to the 150-claim sample, and DENIES the request to strike Torelli's supplemental report as to classwide damages based on a sampling methodology. And the Court DENIES State Farm's request to strike the class definitions proposed in the Reply.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 1, 2021.

Marsha J. Pechman
United States Senior District Judge