UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANYSA NGETHPHARAT, JAMES KELLEY, | CASE NO. C20-454 MJP |
| Plaintiffs, | ORDER ON MOTIONS TO EXCLUDE |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, et al., | |
| Defendants. | |
| FAYSAL A JAMA | CASE NO. C20-652 MJP |
| Plaintiff, | |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

This matter comes before the Court on Plaintiffs' Joint Motions to Exclude John G.

Lynch, Jr., Ph.D. (Ngethpharat, Dkt. No. 93; Jama, Dkt. No. 67) and M. Laurentius Marais,

Ph.D. (Ngethpharat, Dkt. No. 95; Jama, Dkt. No. 65) and Defendants' Motions to Exclude the Supplemental Declaration of Darrell M. Harber (Ngethpharat, Dkt. No. 108; Jama, Dkt. No. 80) and the Supplemental Expert Report of Paul A. Torelli, Ph.D. (Ngethpharat, Dkt. No. 110; Jama, Dkt. No. 82). Having reviewed the Motions, the Oppositions (Ngethpharat, Dkt. Nos. 113, 115, 119, 120; Jama, Dkt. Nos. 85 87, 91, 92), Replies (Ngethpharat, Dkt. No. 117, 118, 122, 123; Jama, Dkt. Nos. 89, 90, 94, 95), and all supporting materials, and having held oral argument on the Motions on June 22, 2021, the Court ORDERS as follows: (1) the Court GRANTS the Motion to Exclude Lynch; (2) the Court GRANTS the Motion to Exclude Marais; (3) the Court GRANTS the Motion to Exclude Harber's supplemental declaration; and (4) the Court DENIES the Motion to Exclude Torelli' supplemental report.

## BACKGROUND

The Court recently ruled on the motions for class certification filed in these related cases, and those orders set forth the relevant background. (See Ngethpharat, Dkt. No. 136; Jama, Dkt. No. 109.) The four pending motions to exclude all relate to issues raised in the motions for class certification. With their reply briefs, Plaintiffs in these actions sought to exclude the expert reports of John Lynch, Jr., Ph.D. and M. Laurentius Marais, Ph.D. And Defendants ask the Court to exclude the supplemental report of Paul Torelli, Ph.D. and the supplemental declaration of Darrell Harber that Plaintiffs' filed with their replies in support of class certification. The Court already addressed Defendants' request to strike Torelli's and Harber's supplemental items in ruling on the motions for class certification.

# ANALYSIS

## A.    Legal Standard

"Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case." City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1043 (9th Cir. 2014) (citing Fed. R. Evid. 702.). The proponent of the expert's opinions bears the burden of proving their admissibility. Lust By & Through Lust v. Merrell Dow Pharms., Inc., 89 F.3d 594, 598 (9th Cir. 1996). And in evaluating challenges to the admissibility of expert opinions, the trial court acts as the "gatekeeper, not the fact finder." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010) (citation omitted). The court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013).

"The test of reliability is flexible" and the "court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." City of Pomona, 750 F.3d at 1044. These are not mandatory factors, and "[c]hallenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." Id. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano, 598 F.3d at 564 (citation omitted).

"Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591 (1993) (quoting Fed. R. Evid. 702). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." Primiano, 598 F.3d at 565 (citation and internal quotation marks omitted).

## B. Lynch

Plaintiffs ask the Court to exclude Lynch's survey of current and former State Farm insureds falling within the proposed class definitions and the opinions Lynch draws from the survey results. Plaintiffs argue that Lynch made methodological errors by: (1) not sampling the appropriate group; (2) did not address non-response bias; and (3) failed to ask relevant questions. The Court agrees with Plaintiffs as to the third point and excludes Lynch's survey and opinions.

Lynch designed a survey of putative class members based on Plaintiffs' original class definitions. Of the list of 60,689 claims, he found only 50,970 of the insureds had email addresses. (Expert Report of John Lynch, Jr. ¶ 14 (Ngethpharat, Dkt. No. 85-2).) After some testing, he ultimately sent a survey to 4,000 randomly-sampled individuals and only 10.7% completed (427) the survey. (Id. ¶ 22 and Ex. 5 to Lynch Report.) Through what looked like a communication directly from State Farm, Lynch's survey asked the following questions:

1. Did you call your State Farm insurance agent after your total loss accident?

2. Did you speak with a State Farm claim specialist after your total loss accident?

3. Were you satisfied or dissatisfied with the speed of the final settlement you received from State Farm?

4. Were you satisfied or dissatisfied with the amount of the final settlement you received from State Farm?

5. Did you tell State Farm that you disagreed with the dollar value of the settlement for your totaled vehicle?

6. When you made your total loss claim, did you do your own research to figure out the fair market value of your vehicle?

7. What sources did you consult to figure out the fair market value of your vehicle just prior to your accident? Select all that apply

8. When you replaced your totaled vehicle, did you negotiate the price of the replacement vehicle you purchased or leased?

(Ngethpharat, Dkt. No. 85-2 at 9-10.)

"Treatment of surveys is a two-step process." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001). The Court determines whether the survey is admissible—is a "proper foundation for admissibility"—and whether the survey is "relevant and conducted according to accepted principles." Id. If the Court finds the survey admissible, then "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." Id. These are issues for the jury, not the court to decide. See id.

Lynch's survey and opinions are subject to exclusion due to their lack of relevance to the pertinent issues in these cases. Defendants argue that Lynch's survey is relevant to assessing whether some class members reached an agreement over the value of their total loss vehicle. As the Court has explained in ruling on the motions for class certification, the narrow safe harbor to which this issue relates requires Defendants to provide evidence that the claim file contains an express agreement by the insured to the Autosource Report's use of a typical negotiation discount. (Ngethpharat, Dkt. No. 136 at 13-15.) But Lynch's survey failed to ask any questions relevant to that narrow issue. Absent are any questions about whether the recipient agreed with the value State Farm came up with for the loss vehicle, whether the person knew about the typical negotiation discount, whether the insured agreed with the typical negotiation discount, or whether the typical negotiation discount was applied to the insured's claim. The same is true as

to the "condition deduction" at issue in the <u>Jama</u> matter. The survey's eight questions merely gauge customer satisfaction generally and Lynch offers no insight into the "agreed value" safe harbor on which Defendants rely. The Court finds that Lynch's survey and opinions are properly excluded as irrelevant and unhelpful to the trier of fact. <u>See</u> <u>Clicks</u>, 251 F.3d at 1263.

The Court otherwise disagrees with Plaintiffs that Lynch's survey is methodologically flawed. First, the Court does not find that Lynch's survey was overinclusive. Lynch used the class definitions provided by Plaintiffs, which defined the classes broadly enough to include insureds who were not paid a value based on a typical negotiation discount or condition deduction. That fault cannot be ascribed to Lynch. Second, the Court remains unconvinced that the sample was underinclusive. Plaintiffs argue that Lynch did not know the distribution between former and current insureds and how that impacted the results. But with Defendants' opposition briefing, Lynch has clarified that the reporting rate was slightly higher for current insureds, but that there were no differences in "satisfaction or in any other survey measure" as between the two population. (Declaration of John Lynch in Opposition to Plaintiffs' Motion to Exclude ¶ 4 (<u>Ngethpharat</u>, Dkt. No. 114-4).) Third, the Court is not convinced that there is a significant flaw due to a nonresponse bias. Lynch has provided additional information about the nonresponse bias, which goes to the weight, not the admissibility of the survey. (<u>Id.</u> ¶¶ 21-33.) While the Court agrees with Defendants on these methodological issues, it does not change the fact that Lynch's survey and opinions are irrelevant and subject to exclusion.

The Court GRANTS Plaintiffs' Motion and EXCLUDES Lynch's survey and opinions.

**C.    Marais**

Plaintiffs ask the Court to exclude Marais's opinions he provided in response to four questions posed by Defendants. The Court agrees.

First, the Court finds that Marais's opinions in response to the first two questions about weighting and adjustments are irrelevant and unhelpful to the factfinder. (Marais Report ¶¶ 10-20 (Ngethpharat, Dkt. No. 85-1).) As the Court has explained in ruling on the motions for class certification, the Court has rejected Defendants' arguments that the typical negotiation discount is a not an adjustment governed by Section 391, but some form of permissible weighting. (Ngethpharat, Dkt. No. 136 at 15-16.) Marais' opinions in response to the first two questions about weighting and adjustments are therefore irrelevant to this matter and subject to exclusion. See City of Pomona, 750 F.3d at 1403.

Plaintiffs also ask the Court to exclude Marais's opinions and criticism of Torelli's damages model as an improper legal opinion. The Court agrees. Marais provides his opinions about he "would expect to find in an expert report on damages," and concludes that "Dr. Torelli's/Plaintiffs' counsel's proposed measure of damages do[es] not conform meaningfully to the standard definition of economic damages." (Marais Report ¶¶ 21-26.) But Marais offers no substantive criticism based on his expertise as an economist to the damages model that Torelli provides. Instead, he opines on what he believes the legally appropriate measure of damages should be. But the correct measure of damages is a legal question for the Court to determine. The Court excludes these opinions as improper legal opinions and ultimately irrelevant.

Finally, Plaintiffs ask the Court to exclude Marais's criticism of Harber's opinions as to whether advertised prices reflect the fair market value of a car. Marais provides an academic opinion of the term "fair market value." (Marais Report ¶¶ 27-31.) But Marais's opinions on that term's meaning are irrelevant because the term is defined in and circumscribed by the regulations at issue in this case. To the extent any further definition of the term is needed, it is for the Court

to provide any further clarification, not an expert. The Court finds that Marais's opinion about the concept of "fair market value" would not assist the trier of fact and excludes it.

The Court GRANTS Plaintiffs' Motion and EXCLUDES Marais's report and opinions.

**D.  Harber**

Defendants ask the Court to exclude the supplemental declaration of Harber filed with the replies to the motions for class certification. The Court agrees.

Plaintiffs retained Harber to provide his opinions as a vehicle appraisal expert. Harber's supplemental declaration responds to Marais's opinions about whether the typical negotiation discount is a form of weighting and not an adjustment. Harber's opinions range from providing a regulatory history, his personal views on how weighting has historically been used under the Washington regulations, and examples of weighting. Ultimately, Harber's opinions on this issue are irrelevant given the Court's determination that the typical negotiation discount is not a form of weighting that might somehow be permitted under the relevant regulations. The Court therefore GRANTS the Motion and EXCLUDES the opinions contained in the supplemental declaration.

The Court also notes that Harber offers improper legal opinions—Harber's interpretations of the regulations—and statistical opinions despite having admitted he is not an expert statistician. (See Harber Supplemental Declaration ¶¶ 5-10, 12 (Ngethpharat, Dkt. No. 92); Harber Dep. 126:24–127:21 (Ngethpharat, Dkt. No. 109-1).) While Harber may testify based on his experience as a vehicle appraiser, he cannot offer legal interpretations of the relevant regulations or opinions on which he has admitted he lacks expertise. This is an additional basis on which the Court excludes paragraphs 5-10 and 12 of Harber's supplemental declaration and GRANTS the Motion.

**E.  Torelli**

Defendants ask the Court to exclude Torelli's supplemental report filed with Plaintiffs' replies to their motions for class certification. The Court disagrees.

Defendants first argue that representative evidence cannot be used to prove liability or damages and that Torelli's opinions try to do just that. But Torelli merely describes a potential methodology using representative evidence to calculate damages, not liability. (Torelli Supplemental Report ¶¶ 3-19 (Ngethpharat, Dkt. No. 88).) As the Court explained in ruling on the motions for class certification, the use of representative evidence in the context of damages is permissible under Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 993 F.3d 774, 790 (9th Cir. 2021). (See Ngethpharat, Dkt. No. 136 at 23-24.) And, as the Court has explained, this methodology tracks the damages recoverable under the legal theories Plaintiffs pursue. (See Ngethpharat, Dkt. No. 136 at 21-24; Jama, Dkt. No. 109 at 24-27.) Additionally, Defendants argue that Torelli's report would improperly include persons who suffered no damages and its use of aggregate damages is unreliable. (Mot. at 9-11) But based on the refinement in the class definition, the Court finds no such flaws. Provided Plaintiffs establish liability, the classes will not include uninjured class members.

Defendants also attack Torelli's proposed damages model regarding the "condition deduction" that is at issue in Jama. Defendants argue that limiting the class to other those who received a condition deduction improperly creates a "fail-safe class." (Mot. at 10-11.) The Court remains unconvinced. A fail-safe class exists when it "is defined so narrowly as to 'preclude[ ] membership unless the liability of the defendant is established.'" Ruiz Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1138 (9th Cir. 2016) (quoting Kamar v. RadioShack Corp., 375 Fed. App'x 734, 736 (9th Cir. 2010)). Here, the Jama "condition deduction" class includes anyone who was

paid a value based on an Autosource Report that included a condition deduction. Identification of those individuals is entirely separate from and not dependent upon Plaintiff Jama's ability to establish liability. The Court rejects this as a basis to exclude Torelli's opinions.

The Court DENIES the Motion to Exclude Torelli's supplemental report.

## CONCLUSION

Plaintiffs have demonstrated that both Lynch and Marais offer unhelpful expert opinions that are not relevant to the fact finder's ultimate inquiry in these cases. The Court therefore GRANTS the Motions to Exclude Lynch and Marais and EXCLUDES their reports and opinions. Defendants have also shown that Harber's supplemental declaration contains irrelevant and, to some degree, improper opinions. The Court GRANTS the Motion to Exclude Harber's supplemental declaration and EXCLUDES the declaration and the opinions it contains. But Defendants have not convinced the Court that exclusion of Torelli's supplemental report is proper. The Court DENIES the Motion to Exclude Torelli's supplemental report.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 7, 2021.

Marsha J. Pechman
United States Senior District Judge